# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 25, 2006          Decided July 21, 2006

No. 05-3130

UNITED STATES OF AMERICA,
APPELLEE

v.

DANIEL DORCELY,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00454-04)

———

*Melissa J. Stofko* argued the cause for the appellant. *Peter M. Brody*, appointed by the court, was on brief.

*Florence Pan*, Assistant United States Attorney, argued the cause for the appellee. *Kenneth L. Wainstein*, United States Attorney, and *Roy W. McLeese, III* and *Daniel P. Butler*, Assistant United States Attorneys, were on brief. *Suzanne C. Nyland* and *Thomas J. Tourish, Jr.*, Assistant United States Attorneys, entered appearances.

Before: SENTELLE, HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Daniel Dorcely was convicted of making a false statement to the Federal Bureau of Investigation (FBI) and acquitted of conspiracy to commit money laundering and conspiracy to defraud the government. Applying the sentencing regime prescribed in *United States v. Booker*, 543 U.S. 220 (2005), the district court sentenced Dorcely to 24 months' incarceration and ordered him to pay restitution in the amount of $63,315.51. In sentencing Dorcely, the district court took into account Dorcely's role in the conspiracies, finding by a preponderance of the evidence that he was involved in them notwithstanding his acquittal on those offenses. Dorcely appeals his sentence. He argues that the district court's consideration of acquitted conduct violated the Fifth and Sixth Amendments and in the alternative was unreasonable. He also claims that the restitution order impermissibly considered losses other than those caused by the conduct of which he was convicted. We affirm in part and vacate in part, concluding that his sentence of 24 months' incarceration was neither unconstitutional nor unreasonable but that the restitution order must be remanded for the district court's reconsideration.

I.

The appellant, Daniel Dorcely, owned and operated Dany Enterprises, a struggling cellular telephone sales business. On December 20, 1999, he opened a bank account at the Adelphi, Maryland branch of Bank of America and deposited $110 into the account. Dorcely thereafter enlisted in the U.S. Army and, before leaving for basic training at Fort Benning, Georgia, made "Tyrone Wallace," the alias of his cousin, Stateson François, a signatory on the Dany Enterprises bank account. On March 15, Dorcely and François met with Albert Mundy, the Bank of America Adelphi branch manager. According to Mundy, Dorcely introduced François as "Tyrone Wallace" and advised Mundy that a substantial sum of money from a school contract

would be deposited into the Dany Enterprises account over the next months.

On March 30, 2000, the Department of Education (DOE) direct-deposited $906,705 into the Dany Enterprises account with the annotation, "Bennett County School, Impact Aid." That same day, "Wallace" made a withdrawal of $60,600 from the account. Of that amount, he obtained a cashier's check for $46,900 made out to Capitol Cadillac. François and John Holmes, a co-conspirator, used the cashier's check to purchase a Cadillac Escalade in the name of "Timothy Robbins," Holmes's alias.

On April 4, DOE direct-deposited another $18,368.43 into the Dany Enterprises account. François and Dorcely's brother-in-law, Dominique Germain, obtained two cashier's checks from the Dany Enterprises account on that day: one for $50,000 made out to Wilson Powell Lincoln Mercury and another for $48,000 made out to Lustine Chevrolet. François and Holmes purchased a Lincoln Navigator with the former. They attempted to buy a Chevrolet Corvette with the latter. The manager of the Chevrolet dealership, suspicious of the duo, delayed the sale by refusing the cashier's check ostensibly because the dealership's name was misspelled. After François and Holmes left to obtain a new cashier's check, the manager contacted the FBI.

The FBI determined that the funds in the Dany Enterprises account had been fraudulently obtained and froze the account on April 5, 2000, at which time the account had a balance of $766,473.43. The FBI discovered that the funds had been obtained from DOE, which had earmarked them for under-funded elementary and secondary schools in South Dakota under a program called "Impact Aid." Apparently an unknown DOE employee conspired with the two and altered the school districts' bank account information in the DOE computer system, diverting Impact Aid funds to the Dany Enterprises account.

During its investigation, the FBI contacted Dorcely at Fort Benning, Georgia. Special Agent Thomas Chadwick telephoned Dorcely on April 18, 2000. During their conversation, Dorcely informed Chadwick that "Tyrone Wallace" was a "buddy," denying that "Wallace" was related to him. 1/27/2004 Tr. at 85. Dorcely further stated that he had met "Wallace" only seven or eight months before and that "Wallace," who had expressed an interest in cellular telephone sales, was running Dany Enterprises in his absence. *Id.* Chadwick later met with Dorcely face-to-face. Dorcely at that time falsely stated that "Tyrone Wallace" and François were two different people. *Id.* at 86–87.

The government charged Dorcely with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and one count of making a false statement to the FBI in violation of 18 U.S.C. § 1001. Following trial, the jury convicted Dorcely of making a false statement to the FBI and acquitted him of both conspiracy charges.

The district court conducted Dorcely's first sentencing hearing on June 4, 2004, applying the then-mandatory U.S. Sentencing Guidelines (Guidelines). The Guidelines specified a sentencing range of zero to six months for the false statement conviction. The government argued for a sentencing range of 24 to 30 months because, it maintained, it had proved by a preponderance of the evidence that Dorcely had participated in the conspiracy, which constituted "relevant conduct" under the Guidelines. Over Dorcely's objection, the district court agreed with the government and sentenced Dorcely to 24 months' incarceration. The government also sought restitution, which the district court ordered in the amount of $63,315.51.

Following Dorcely's sentencing, the United States Supreme Court decided *Blakely v. Washington*, 524 U.S. 296 (2004). In

light of *Blakely*, Dorcely moved for reconsideration of his sentence. After the High Court granted certiorari in *Booker*, *supra*, the district court stayed the execution of the sentence to "await a decision by the Supreme Court as to whether its decision in *Blakely v. Washington* applies to the United States Sentencing Guidelines." *United States v. Dorcely*, No. 01–454, slip op. at 1 n.2 (D.D.C. filed Aug. 6, 2004) (citation omitted). Dorcely also appealed his sentence to this court and asked us to hold the appeal in abeyance pending *Booker*. We granted his motion. Following the Supreme Court's decision in *Booker*, Dorcely moved this court to vacate his sentence and remand for resentencing, which motion we granted. *See United States v. Dorcely*, 2005 WL 583132, *1 (D.C. Cir. March 11, 2005).

The district court held Dorcely's resentencing hearing on July 19, 2005. Over Dorcely's objection, it concluded that *Booker* did not affect its authority to consider Dorcely's participation in the conspiracies under the preponderance of the evidence standard and again sentenced Dorcely to 24 months' incarceration. It also reimposed the order of restitution in the amount of $63,315.51.

## II.

### A.

Dorcely first contends that his sentence, based in part on acquitted conduct, violated his Sixth Amendment right to trial by jury and his Fifth Amendment right to due process of law. We review issues of law relating to sentencing de novo. *See, e.g.*, *United States v. Alexander*, 331 F.3d 116, 130 (D.C. Cir. 2003); *United States v. Gaviria*, 116 F.3d 1498, 1518 (D.C. Cir. 1997) (per curiam). Applying this standard of review, we find no constitutional error in Dorcely's sentence.

We were recently presented with the same question this case presents: whether a sentence based on acquitted conduct violates the Sixth Amendment. *See United States v. Edwards*, 424 F.3d

1106, 1108 (D.C. Cir. 2005). There we observed that the Supreme Court "has not, however, determined whether the practice violates the Sixth Amendment,"[1] but we did not address the issue because we remanded the case in accordance with *United States v. Coles*, 403 F.3d 764, 771 (D.C. Cir. 2005) (per curiam). We now reach the question and decide that a sentencing court may base a sentence on acquitted conduct without offending the defendant's Sixth Amendment right to trial by jury. In so holding, we agree with every circuit that has considered the question post-*Booker*. *See United States v. Ashworth*, 139 F. App'x 525, 527 (4th Cir.), *cert. denied*, 126 S. Ct. 765 (2005); *United States v. Duncan*, 400 F.3d 1297, 1304–05 (11th Cir.), *cert. denied*, 126 S. Ct. 432 (2005); *United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir.), *cert. denied*, 126 S. Ct. 468 (2005); *United States v. Price*, 418 F.3d 771, 787–88 (7th Cir. 2005); *United States v. Vaughn*, 430 F.3d 518, 525–27 (2d Cir. 2005).

Before *Booker*, we had held that a sentencing court may consider conduct of which the defendant was acquitted provided the conduct was proved by a preponderance of the evidence. *See, e.g.*, *United States v. Yelverton*, 197 F.3d 531, 535 n.3 (D.C. Cir. 1999) (citing *United States v. Thomas*, 114 F.3d 228, 261 (D.C. Cir. 1997); *United States v. Dozier*, 162 F.3d 120, 125 (D.C. Cir. 1998)). Nothing in *Booker* undermines our precedent. Under *Booker*, consideration of acquitted conduct violates the Sixth Amendment only if the judge imposes a sentence that exceeds what the jury verdict authorizes. *Booker*, 543 U.S. at 244 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum

---

[1]In *United States v. Watts*, 519 U.S. 148 (1997), the Supreme Court had earlier rejected a challenge to the sentencing court's consideration of acquitted conduct based on the double jeopardy clause.

authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). Here, Dorcely's conviction on the false statement count authorized a sentence of "imprison[ment] not more than 5 years." 18 U.S.C. § 1001(a). His sentence of 24 months' incarceration plainly falls within the authorized sentence.

We find two aspects of the *Booker* holding instructive here. First, the Court noted that "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant," further noting that a sentencing court has "broad discretion in imposing a sentence within a statutory range." *Booker*, 543 U.S. at 233. While the Court did not expressly address the sentencing court's consideration of acquitted conduct, we believe its language is broad enough to allow consideration of acquitted conduct so long as the court "deems [it] relevant." Second, the *Booker* remedial opinion expressly endorsed 18 U.S.C. § 3661, concluding that it poses no Sixth Amendment problem. *See id.* at 251. Section 3661 provides, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" and permits a sentencing court to consider acquitted conduct. *See United States v. Watts*, 519 U.S. 148, 151 (1997).

Dorcely next contends that the district court's consideration of acquitted conduct violated his due process right under the Fifth Amendment. We disagree. The Supreme Court has instructed that "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 247 (1949). It has therefore found that a sentencing court may

"consider[ ] a defendant's past criminal behavior, even if no conviction resulted from that behavior," without violating due process. *Nichols v. United States*, 511 U.S. 738, 747 (1994) (citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986)); *cf. BMW of North America, Inc. v. Gore,* 517 U.S. 559, 573 n.19 (1996) ("A sentencing judge may even consider past criminal behavior which did not result in a conviction.").

Furthermore, we reject Dorcely's claim that a sentencing court's use of acquitted conduct must be based not on a preponderance of the evidence but instead evidence beyond a reasonable doubt. In *Watts*, the Supreme Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Watts*, 519 U.S. at 157. Dorcely characterizes the *Watts* language as relating solely to the double jeopardy clause. The Court's discussion of the preponderance of the evidence standard, however, also plainly encompasses the due process clause. The Court upheld the Guidelines' application of the preponderance of the evidence standard to a sentencing court's consideration of relevant conduct, including acquitted conduct, explaining that the application of "the preponderance standard at sentencing generally satisfies due process." *Id.* at 156.[2] Moreover, before *Booker*, we rejected the argument that facts at sentencing must be proved by a more stringent standard than preponderance of the evidence, *see, e.g.*, *United States v. Long*, 328 F.3d 655, 670–71 (D.C. Cir. 2003), including findings that the defendant engaged in conduct of which he was acquitted,

---

[2]The Court left open the question whether a higher standard of proof might be necessary if relevant conduct dramatically increased the sentence. *See Watts*, 519 U.S. at 156–57. Dorcely does not press this argument.

*see, e.g.*, *Yelverton*, 197 F.3d at 535 n.3. Nothing in *Booker* suggests a contrary result.

## B.

Dorcely argues in the alternative that his 24-month imprisonment sentence was unreasonable. The *Booker* Court directed the circuit courts of appeal to review sentences for reasonableness, *see Booker*, 543 U.S. at 260–61, but it did not expressly describe the jurisdictional basis therefor. Section 3742(a)(1) of Title 18 provides us with jurisdiction to review a sentence that "was imposed in violation of law" and we believe our jurisdiction to review for reasonableness must come from this provision.[3] The government contends that section 3742(a)(1) does not give us jurisdiction to review a sentence within a properly calculated Guidelines range, relying on our pre-*Booker* precedent. *See United States v. Hazel*, 928 F.2d 420, 423–24 (D.C. Cir. 1991) (review of within Guidelines sentence is limited to "determin[ing] whether the guidelines were correctly applied"). We disagree, concluding that the *Booker* decision has overruled our precedent on this point.[4]

---

[3]18 U.S.C. § 3742(a)(3), providing jurisdiction to review a sentence that "is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater . . . term of imprisonment . . . than the maximum established in the guideline range," is inapplicable because Dorcely challenges neither the application of the Guidelines nor the calculation of his Guidelines range.

[4]Because our conclusion—that section 3742(a)(1) provides us with jurisdiction to review *any* sentence for reasonableness—conflicts with Circuit precedent, it has been considered separately and approved by the full court. *See Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981). An *Irons* footnote is appropriate because we are

The government cites no post-*Booker* case law supporting its position—nor could it. Every circuit that has considered the issue has decided that section 3742(a)(1) provides appellate jurisdiction to review any sentence for reasonableness. *See United States v. Chavez-Diaz*, 444 F.3d 1223, 1228–29 (10th Cir. 2006); *United States v. Cooper*, 437 F.3d 324, 327–28 (3d Cir. 2006); *United States v. Fernandez*, 443 F.3d 19, 25–26 (2d Cir. 2006); *United States v. Jiménez-Beltre*, 440 F.3d 514, 517 (1st Cir. 2006) (en banc); *United States v. Martinez*, 434 F.3d 1318, 1321–22 (11th Cir. 2006*)*; *United States v. McBride*, 434 F.3d 470, 475–76 (6th Cir. 2006); *United States v. Mickelson*, 433 F.3d 1050, 1052–55 (8th Cir.2006); *United States v. Montes-Pineda*, 445 F.3d 375, 377 (4th Cir. 2006); *United States v. Plouffe*, 445 F.3d 1126, 1127–29 (9th Cir. 2006); *United States v. Vaughn*, 433 F.3d 917, 923–24 (7th Cir. 2006). We, too, conclude that an unreasonable sentence is a sentence "imposed in violation of law." *Cf. In re Sealed Case*, 449 F.3d 118, 123 (D.C. Cir. 2006) ("*Booker* . . . appears to assume there is jurisdiction to hear an appeal to consider the reasonableness of a sentence without regard to the merits of the claim."). The *Booker* remedial opinion is unequivocal on this point, declaring that "the [Sentencing Reform] Act continues to provide for appeals from sentencing decisions (*irrespective of whether the trial judge sentences within or outside the Guidelines range* in the exercise of his discretionary power under § 3553(a))." 543 U.S. at 260 (emphasis added) (citing 18 U.S.C. § 3742(a)–(b)). Justice Scalia's dissent accurately characterizes the remedial opinion's effect on appellate review: the reasonableness standard now "appl[ies] across the board to all sentencing

"overruling a more recent precedent which, due to an intervening Supreme Court decision . . . a panel is convinced is clearly an incorrect statement of current law." Policy Statement on *En Banc* Endorsement of Panel Decisions 2–3 (Jan. 17, 1996).

appeals, even to sentences within 'the applicable guideline range,' where there is no legal error or misapplication of the Guidelines." *Id.* at 311 (Scalia, J., dissenting in part). Accordingly, we now review any sentence, whether within the Guidelines range or not, "to ensure that it is reasonable in light of the sentencing factors that Congress specified in 18 U.S.C. § 3553(a)." *United States v Price,* 409 F.3d 436, 442 (D.C. Cir. (2005).[5]

---

[5]18 U.S.C. § 3553(a) provides:

Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range

established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28,

The government argues that the *Booker* language on which we rely is only dictum. We disagree. The *Booker* Court remanded for resentencing, adding that "if the sentence comes before the Court of Appeals for review, the Court of Appeals should apply the review standards set forth in this opinion," that is, review for reasonableness. 543 U.S. at 267. Furthermore, even if the language were dictum, "carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *Sierra Club v. EPA*, 322 F.3d 718, 724 (D.C. Cir. 2003) (quoting *United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) (internal quotation marks and citation omitted); citing *Bangor Hydro-Elec. Co. v. FERC*, 78 F.3d 659, 662 (D.C. Cir. 1996) ("It may be *dicta*, but Supreme Court dicta tends to have somewhat greater force-particularly when expressed so unequivocally.")).

---

United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Exercising our jurisdiction, we consider the merits of Dorcely's claim that his sentence was unreasonable. He makes two arguments: first, he argues that "*any* substantial increase in a sentence based on acquitted conduct should be deemed unreasonable *per se*, regardless whether such an increase is determined to violate the accused's constitutional rights," Appellant's Br. at 24 (emphasis added); and, second, Dorcely contends that even if we reject a per se rule, we should nonetheless find that "the sentence imposed in this case plainly is" unreasonable because it results in a fourfold increase in his term of incarceration. *Id.* at 24–25. We reject both arguments.

We easily dispose of Dorcely's categorical challenge to the reasonableness of a sentencing court's consideration of acquitted conduct. Section 3661 of Title 18, which allows a sentencing court to consider any information regarding a defendant's background, character and conduct, "codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information." *Watts*, 519 U.S. at 151. The Supreme Court has interpreted the language of section 3661 to authorize the court's consideration of acquitted conduct in sentencing. *See id*. at 151–52.

The Guidelines also permit the sentencing court to consider acquitted conduct. In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it.[6] Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G.

---

[6]*Booker* has not changed how the Guidelines range is to be calculated. *See United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005).

§ 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd. We have held that section 1B1.3 "is certainly broad enough to include acts underlying offenses of which the defendant has been acquitted." *United States v. Boney*, 977 F.2d 624, 635 (D.C. Cir. 1992). Not only may the sentencing court consider acquitted conduct in calculating the appropriate Guidelines range but it may also consider that conduct in determining the sentence within the range. Section 1B1.4 of the Guidelines provides: "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661." U.S.S.G. § 1B1.4.

We turn to Dorcely's more circumscribed challenge to the reasonableness of the fourfold increase in his sentence based on acquitted conduct. The sentencing transcript reveals that the district court considered both the Guidelines and the section 3553(a) factors, as *Booker* requires. *See* 7/19/05 Tr. at 31–37. As noted earlier, Dorcely does not argue that his sentence was improperly calculated under the Guidelines. We agree with our sister circuits that a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness. *See Alonzo*, 435 F.3d at 554; *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). Dorcely does not

come close to rebutting this presumption. The district court's explanation for Dorcely's 24-month incarceration sentence—that "a part of any sentence . . . is a component of retribution," 7/19/05 Tr. at 31, that "the Guidelines . . . set a bench mark for what is reasonable," *id.* at 36, to prevent "vast disparit[ies] between what somebody would get going before one judge as compared to what somebody would get when [he] would go before another judge," *id.* at 35, and that Dorcely "was, in fact, responsible or a played a role, at least, in causing those monies to then be diverted from that account and used for illegal purposes," *id.* at 36—was reasonable.

## C.

Finally, Dorcely contests the restitution order, arguing that it was impermissibly based on conduct other than that of which he was convicted. The district court ordered Dorcely to pay restitution in the amount of $63,315.51 "as indicated in the presentence report [PSR]." *Id.* at 37. The PSR provided that "[u]nder 18 U.S.C. § 3663A(a)(1) and (3), the Court shall enter an order for restitution." PSR ¶ 77. Section 3663A(a)(1) requires the district court to order restitution if the defendant is convicted of an "offense described in subsection (c)."[7] Because

---

[7] 18 U.S.C. § 3663A(c)(1) reads:

[The district court shall award restitution] in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense--

(A) that is--

   (i) a crime of violence, as defined in section 16;

   (ii) an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit; or

Dorcely was not convicted of such an offense, restitution under section 3663A was unwarranted.

Although the district court incorrectly ordered restitution under section 3663A, we note that the order would *also* be improper under the permissive restitution provisions of 18 U.S.C. § 3663.[8]  This provision permits (but does not require) the district court to order "the defendant [to] make restitution to any victim of such offense" "when sentencing a defendant convicted of an offense under this title [title 18]."  18 U.S.C. § 3663(a)(1)(A).  As Dorcely's false statement conviction falls under Title 18, he can be ordered to pay restitution but only for the loss caused by "such offense."  In interpreting section 3663, we are guided by the Supreme Court's decision in *Hughey v.*

---

> > (iii) an offense described in section 1365 (relating to tampering with consumer products); *and*
>
> (B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

18 U.S.C. § 3663A(c)(1) (emphasis added).  Notwithstanding the word "and," the government invites us to read subsections (A) and (B) in the disjunctive; under the government's theory, *see* Appellee's Br. 42 n.21, restitution applies if the defendant committed an offense enumerated under (A) *or* if "an identifiable victim or victims has suffered a physical injury or pecuniary loss" under (B).  The government's interpretation does violence to the statutory text.  Under the plain terms of section 3663A, restitution is available only if the defendant meets *both* (A) and (B).

[8]18 U.S.C. § 3663 permits restitution if a defendant is convicted of "an offense under this title [title 18] . . . other than an offense described in section 3663A(c)." 18 U.S.C. § 3663(a)(1)(A).  As noted *supra* p. 16–17, Dorcely's false statement conviction is not an offense described in section 3663A(c).  Moreover, his conviction under 18 U.S.C. § 1001 is plainly an "offense under this title [title 18]."

*United States*, 495 U.S. 411 (1990), which interpreted section 3663's predecessor, 18 U.S.C. § 3579(a)(1).[9]  The Court held that under section 3579(a)(1) restitution may be ordered only "for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413.  It made clear that a defendant charged with multiple offenses but convicted of only one offense cannot be ordered to pay restitution for losses resulting from the other charged offenses. *Id.*  We believe the reasoning of *Hughey* applies with equal force to section 3663 and conclude that restitution under 18 U.S.C. § 3663(a)(1) may be ordered only "for the loss caused by the specific conduct that is the basis of the offense of conviction." Indeed, the government correctly concedes that "[a]lthough it is unclear what the restitution amount of $63,315.51 represents, it seems highly unlikely that it properly reflects the loss caused solely by the false statement."  Appellee's Br. 44.

For the foregoing reasons, we affirm Dorcely's sentence of 24 months' incarceration.  We vacate the order of restitution, however, and remand for further proceedings consistent with this opinion.

*So ordered.*

---

[9]Section 3579(a)(1) authorized the sentencing court to order "a defendant convicted of an offense" to "make restitution to any victim of such offense."  18 U.S.C. § 3579(a)(1) (1982 ed., Supp. IV).