# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 2, 2007        Decided July 20, 2007

No. 06-3035

UNITED STATES OF AMERICA,
APPELLEE

v.

WILLIAM L. LAWSON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00273-01)

*Nikki U. Lotze* argued the cause and filed the briefs for appellant.

*John P. Gidez*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III*, *David B. Goodhand*, and *Kenneth F. Whitted*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and GRIFFITH, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Appellant William L. Lawson challenges his criminal conviction and resulting sentence on multiple grounds. For the reasons set forth below, we affirm his conviction but remand the case to the district court for re-sentencing.

**I.**

Looking for illegal drug transactions, Officer Darrick Wallace of the District of Columbia Metropolitan Police Department parked his unmarked police car at a strip mall on the 5000 block of New Hampshire Avenue, N.W., on the evening of May 14, 2004. From this observation post, Wallace saw appellant Lawson drive his car with a passenger into the mall's parking lot and park in a spot only a few feet away from Wallace's post. With a clear view of the driver's side of Lawson's car, Wallace saw Aubrey Canarte approach the car on a bicycle and, after a brief conversation, hand Lawson some money. Lawson reached up towards the sun visor in his car and retrieved a "small object" that he handed to Canarte, who then pedaled away. Lawson and his passenger soon drove away as well, followed by Wallace and two other officers Wallace had called for assistance. The three officers stopped Lawson's car at a traffic circle a short distance away. As he approached the stopped car, Officer Clayton Smith noticed that Lawson and his passenger were holding clear plastic cups. Believing them to contain alcohol, Smith asked Lawson to step out of the car, at which point Lawson handed Smith the cup. Because the liquid smelled like alcohol, the officers arrested Lawson and his passenger for illegal possession of an open container of alcohol.

Smith also saw an open bottle of champagne inside the vehicle in plain view. While retrieving the bottle, Smith smelled what he suspected was marijuana coming from the center

console. He opened the console and found inside a .40 caliber semi-automatic handgun loaded with seven rounds, a large clear bag holding eight smaller bags containing a total of 11.7 g of crack cocaine, four clear bags containing 8 ecstasy pills (1.3 g in total), and three clear bags of marijuana (8.8 g in total). Smith also found $1,400 in cash on Lawson and another small clear bag of 1.4 g of crack cocaine in the area near the driver's side sun visor. Lawson was charged with unlawful possession with intent to distribute 5 g or more of crack cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii); unlawful possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D); unlawful possession with intent to distribute ecstasy, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); using, carrying, and possessing a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1); and because Lawson had a prior felony conviction for unlawful possession of drugs and guns, unlawful possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1).

At trial, Lawson requested a jury instruction that would allow the jury to find that possession of the 1.4 g of crack cocaine found behind the sun visor could be for his personal use alone while possession of the 11.7 g found in the console was for distribution. The district court agreed to the instruction but explained to the jury that it could still convict Lawson of possession with intent to distribute the smaller amount and could only convict Lawson of simple possession of this amount if the government failed to prove beyond a reasonable doubt that Lawson possessed the larger amount. [*See* 9/13/05 Tr. at 84, 116-17]. The jury convicted Lawson of (1) possession by a felon of a firearm, (2) simple possession of the 1.4 g of crack cocaine, and (3) simple possession of marijuana.[1] The jury acquitted Lawson of using, carrying, and possessing a firearm

---

[1] The last two of these are lesser included offenses of possession-with-intent-to-distribute charges.

during a drug trafficking offense and of possession with intent to distribute marijuana or the smaller amount of crack cocaine. The jury deadlocked on the charges of possession with intent to distribute the larger amount of crack cocaine and the ecstasy found in the console. The government dropped these two charges.

The district court sentenced Lawson to 192 months in prison: 120 months for possession of the firearm, 12 months for possession of the marijuana, and 60 months for possession of the crack cocaine. The court justified the 60-month sentence, which is well beyond the statutory maximum for possession of 1.4 g of crack cocaine, by reasoning that even though the jury did not convict Lawson of possession with intent to distribute the 11.7 g of crack cocaine, his conviction for possession of the gun and the marijuana found in the console was a clear indication "that the jury was concluding that [Lawson] possessed all of the [crack cocaine found in the car.]" 1/12/06 Tr. at 15. Only a week later, the district court, *sua sponte*, announced that it was reconsidering Lawson's 60-month sentence because of its uncertainty as to whether it could impose a sentence that exceeded the statutory maximum for his possession of the 1.4 g based upon its determination that he had also possessed the 11.7 g. Later, the court reduced Lawson's sentence for possession of the 1.4 g to the statutory maximum of 12 months, but reiterated its conclusion that, given the way these drugs were packaged, "the evidence clearly indicated that these drugs [including the 11.7 g of crack cocaine and the ecstasy] were possessed *with the intent to distribute them*." 2/3/06 Tr. at 4 (emphasis added); *see also id.* at 6 ("I do believe that the evidence, by a preponderance, did in fact indicate his involvement in this offense *beyond mere possession*." (emphasis added)).

On appeal, Lawson challenges his convictions, arguing that

the district court abused its discretion when it excluded allegedly relevant evidence, erred in instructing the jury to disregard a portion of his counsel's closing argument, and demonstrated unlawful bias against his counsel throughout the trial. Lawson also argues that the district court violated his Sixth Amendment right to trial by jury by imposing a sentence based on facts not found by the jury and that his sentence was unreasonable because the district court failed to provide a sufficient justification for imposing a sentence higher than the maximum recommended by the Sentencing Guidelines ("Guidelines"). We first address Lawson's arguments relating to his trial and then turn to those challenging his sentence.

## II.

### A. *Faulty Photographs of the Re-Created Crime Scene*

At trial, Lawson argued that no sale of drugs to Aubrey Canarte took place. In an effort to show that Officer Wallace could not have observed the transaction from where he sat in his car, Lawson attempted to submit into evidence two photographs that depicted his attempt to re-create the scene. The photographs showed a car placed in the same spot that Lawson had occupied and a man on a bicycle in two different positions relative to the car. The car in the photographs was not Lawson's.

The district court refused to admit the photographs into evidence because, according to Wallace, they did not accurately represent what he had seen: the bicycle did not appear in the exact position he had recalled seeing it. The court explained that the proper way to use a photographic re-creation for trial would have been to ask the court to "order the officer to go out and position the bike and the person in a manner consistent with what he saw." 9/8/05 Tr. at 104. Lawson's counsel then asked

Wallace on the stand to draw a picture on the photographs depicting the car and the bicycle.  When Wallace protested that he was no "artist" and thus felt uncomfortable trying to draw the scene, the court stopped this line of inquiry.  Lawson's counsel next attempted to present evidence that Lawson's car was unavailable for the photographs because it had been seized in civil forfeiture, but the court rejected this argument, holding that once the photographs were excluded, any evidence that the car had been seized was irrelevant.  The court reminded Lawson's counsel that the photographs were excluded because they could not be authenticated by Wallace.  The fact that the car was not Lawson's was, according to the court, irrelevant.  On appeal, Lawson argues that the court abused its discretion by (i) excluding the photographs, (ii) prohibiting Lawson's counsel from seeking Wallace's drawn corrections to the photographs, and (iii) not allowing counsel to present evidence that Lawson's car had been taken into police custody.

"This Court reviews a district court's evidentiary rulings for abuse of discretion."  *United States v. Watson*, 409 F.3d 458, 462 (D.C. Cir. 2005).  To be admissible, evidence must be relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice or misleading the jury.  *See* FED. R. EVID. 402, 403.  "As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial." *United States v. Blackwell*, 694 F.2d 1325, 1329-30 (D.C. Cir. 1982) (citing FED. R. EVID. 901(a)).  A photograph may be authenticated if a witness with knowledge of the scene testifies that it accurately depicts the scene it purports to represent. *See, e.g.*, *Am. Wrecking Corp. v. Sec'y of Labor*, 351 F.3d 1254, 1262 (D.C. Cir. 2003) (citing FED. R. EVID. 901(b)(1)). Lawson's proffered photographs were properly excluded from evidence because they could not be authenticated.  According to the testimony of Wallace—the only witness at trial with

knowledge of the scene—the photographs did not accurately reflect what he saw. The district court also did not abuse its discretion in preventing Lawson's counsel from forcing Wallace to draw the scene on the photographs. Given Wallace's own professed lack of artistic ability, there was a danger that the potential prejudicial effect of any compelled depiction might substantially outweigh its probative value. Lawson lacked relevant, reliable photographs to submit as evidence. He cannot fault the district court for failing to force Wallace to salvage the faulty photographs.[2] Once the faulty photographs were excluded, the district court did not abuse its discretion in preventing Lawson's counsel from explaining the unavailability of Lawson's car to re-create the scene. The civil forfeiture of Lawson's car was irrelevant as the obstacle to admissibility "ha[d] nothing to do with the car." 9/12/05 Tr. at 78. Any similar vehicle would have sufficed to stage the re-creation. Therefore, we find no abuse of discretion by the district court in its evidentiary rulings.

### B. The Missing-Witness Argument to the Jury

In his closing statement to the jury, Lawson's counsel argued:

---

[2] Lawson seizes upon some of our language in *Henderson v. George Washington University*, 449 F.3d 127 (D.C. Cir. 2006), to argue that the district court abused its discretion in refusing to permit his use of the inaccurate photographs. In *Henderson*, a medical malpractice case, we held that an official post-surgery medical report should have been admitted into evidence because it "[went] to the heart of [the] party's case and appear[ed] crucial to the outcome of the case" while "the prejudice to the party opposing admission of the evidence appear[ed] minimal." 449 F.3d at 141. But in *Henderson*, the improperly excluded official report had been authenticated. Lawson's photographs were unauthenticated and therefore inadmissible.

> And when you retire, ladies and gentlemen, to think about what evidence the government has and hasn't presented, I submit to you that you will find yourself asking a whole bunch of questions that are completely unanswered by the government's evidence. The government hasn't presented to you the testimony of Aubrey Canarte. The government hasn't presented to you a single photograph, or a single video, or anything to suggest that this transaction occurred. And how do you know, ladies and gentlemen, that this supposed transaction didn't occur?

9/13/05 Tr. at 129. A moment later and over objection, the court, *sua sponte*, instructed the jury to disregard counsel's reference to the government's failure to call Canarte because it was, in the court's view, a "partial missing-witness argument" that was inappropriate and could not be made without prior permission from the court. On appeal, Lawson argues that this instruction was error because his counsel was not making a missing-witness argument.

A jury may infer that a witness who "potentially ha[s] so much to offer that one would expect [him] to take the stand" but is not called would have given testimony harmful to a party that had "special ability to produce him" at trial. *United States v. Pitts*, 918 F.2d 197, 199 (D.C. Cir. 1990). And counsel may make that argument upon a showing that the opposing party had such power and failed to use it. *See, e.g.*, *United States v. Young*, 463 F.2d 934, 941 (D.C. Cir. 1972) ("Surely it should not be put to the jury, as either instruction or argument, that an inference should be drawn from a party's failure to produce witnesses if the judge concludes that the party was powerless to do so."). Lawson's counsel could have properly asked the jury

to infer that Canarte would have testified that Lawson sold him no drugs if she could have shown that the government had a special ability to produce Canarte to testify at trial.  But Lawson does not dispute that a missing-witness argument would have been inappropriate.  The government had no special ability to produce Canarte.  Lawson could just as easily have called him.  Lawson argues instead that his counsel was not making such an argument, and we agree.

Lawson was charged with multiple counts of possession-with-intent-to-distribute illegal drugs.  Defending against these counts, Lawson's counsel was simply calling into question the sufficiency of the government's evidence, a typical and expected argument for a case like this.  It was entirely reasonable for counsel to point out to the jury the kinds of evidence that they might have expected to see but did not in a case to prove that illegal drugs were sold. Emphasizing the lack of one form of evidence—in this instance, testimony by Canarte—is not always or necessarily an argument that a witness not called would have provided testimony harmful to the prosecution's case. *See, e.g.*, *Burgess v. United States*, 440 F.2d 226, 235 (D.C. Cir. 1970) ("[T]he significance of the absence of a witness is not confined to an inference that if produced his testimony would be unfavorable to the party who has the power to produce him.").  Lawson's counsel did not even ask the jury to infer, either directly or in a meaningful indirect manner, that Canarte would have testified against the government's case.  *See United States v. Henson*, 486 F.2d 1292, 1298 n.4 (D.C. Cir. 1973) (holding that a party did not make a missing-witness argument because "[t]he remarks did not directly, or in a meaningful indirect manner, ask the jury to draw an impermissible inference from [a witness's] absence").  Counsel was making a permissible argument based on absence of evidence that the government had failed to prove that Lawson sold illegal drugs.  The district court should not have instructed

the jury to disregard this argument.

But not every error during a trial requires reversal of a conviction. In fact, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." FED. R. CRIM. P. 52(a); *see United States v. Olano*, 507 U.S. 725, 731 (1993). An error affecting "substantial rights" must have a "substantial and injurious effect or influence in determining the . . . verdict." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946)). The district court's error did not have such an effect or influence. The jury failed to convict Lawson of selling drugs. Each of his drug convictions was for possession alone. The argument his counsel was forbidden to make went only to the distribution charges. Had counsel been allowed to make her full argument about Canarte's failure to testify, the jury could have at most inferred that Lawson had not sold him drugs, which would have left virtually untouched the government's substantial case against Lawson for unlawful possession of illegal drugs. It is highly unlikely that the jury would have struggled over Lawson's possession charges because of the government's failure to call Canarte to the stand.

## C. *The District Court's Alleged Bias Against Lawson*

Lawson also makes an overarching claim that the district court "demonstrated bias against counsel that deprived [Lawson] of his constitutional right to a fair and impartial trial." Appellant's Br. at 37. He points to instances of allegedly unfair evidentiary rulings, *see id.* at 39, unfair jury instructions, *see id.* at 39-40, unfair *sua sponte* questioning of witnesses, *see id.* at 41, "result-oriented reasoning" in imposing an unreasonable sentence, *id.*, and critical remarks by the judge against his counsel and her techniques, *see id.* at 43.

Lawson's argument of bias is similar to the one made in *United States v. Donato*, 99 F.3d 426 (D.C. Cir. 1996), where we explained:

> [A] district judge has wide discretion in monitoring the flow of a criminal trial. It is well within her discretion to rebuke an attorney, sometimes harshly, when that attorney asks inappropriate questions, ignores the court's instructions, or otherwise engages in improper or delaying behavior. Sharp words spoken by a trial court to counsel do not by themselves establish impermissible bias. There is a modicum of quick temper that must be allowed even judges.

*Id.* at 434 (citations and quotation marks omitted). Notwithstanding this deference, in *Donato* we reversed the appellant's criminal conviction because "the negative comments . . . were more concentrated, frequent, and critical than [in other cases]" and "the relative brevity of [the] trial ma[de] it more likely that the judge's negative comments colored the entire trial." *Id.* at 435.

We have reviewed the record with *Donato* in mind, and have some cause for concern. The interactions between the court and Lawson's counsel in this three-day trial were frequently on less-than-friendly terms. Yet, we do not believe that the court's conduct warrants either reversal or a retrial. Lawson fails to demonstrate any harm from the exchanges between the court and his counsel. The court took care to instruct the jury not to take its comments or remarks to counsel as any indication of its opinion of the merits or its view of the facts. *See* 9/8/05 Tr. at 128. It is also significant that the court's comments were directed at Lawson's counsel and not at him or

his witnesses. *See United States v. Clark*, 184 F.3d 858, 869 (D.C. Cir. 1999) (considering a mistrial claim and giving weight to the fact that "the court's comments were directed at the attorneys, not at defendant or his witnesses" (citing *Donato*, 99 F.3d at 437-38; *United States v. Edmond*, 52 F.3d 1080, 1101-02 (D.C. Cir.1995))). And many of the comments Lawson cites were made at the bench (inaudible to the jurors) or while the jury was not in the courtroom. *See, e.g.*, 9/8/05 Tr. at 51-54, 103-04; 9/13/05 Tr. at 121-23.

Furthermore, it is likely that Lawson's counsel bears some responsibility for the court's reactions. In most of the exchanges cited by Lawson, the court correctly ruled that counsel had failed to properly frame her questions. At times, counsel's manner of introducing evidence did not manifest its relevance, either immediately or even after further questioning. *See, e.g.*, 9/8/05 Tr. at 43-54, 102-111. Counsel made arguments in front of the jury that were at least confusing to the jury and the judge, *see, e.g.*, 9/13/05 Tr. at 121-23, and arguably inappropriate, *see, e.g.*, *id.* at 129-35. Counsel interrupted the judge on a number of occasions, *see, e.g.*, *id.* at 154.

Finally, we again note that despite the packaging and the amount of the drugs found in Lawson's car, the jury did not convict Lawson of any possession-with-intent-to-distribute charges. Therefore, although the court's remarks were occasionally harsh and the exchanges with counsel less than ideal, Lawson has not demonstrated that, under the circumstances, these remarks had such a distorting influence on the jury's determinations as to warrant a reversal of Lawson's conviction or to require a retrial.

Having affirmed Lawson's conviction, we now review his sentence.

**III.**

*A. The* Booker *Argument*

Lawson argues that the district court violated his Sixth Amendment right to trial by jury under *United States v. Booker*, 543 U.S. 220 (2005), by imposing a sentence higher than the maximum provided for by the Guidelines based on facts not found by the jury. His argument is flawed in at least two ways.

First, Lawson argues that the district court could not lawfully impose a sentence higher than the maximum Guidelines sentence. This argument is plainly wrong. Under *Booker*, the Guidelines are advisory, not mandatory, *see id.* at 245 (excising the statutes that make the Guidelines mandatory). No Sixth Amendment issue is raised unless a sentence exceeds its *statutory* maximum. *See id.* at 244 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000))).

Second, Lawson argues that the district court could not lawfully enhance his sentence beyond the recommended maximum Guidelines sentence based on conduct for which he was not convicted—in this case, possession of the larger amount of crack cocaine found in the console.[3] However, as we have discussed above, the district court determined that although the

---

[3] Lawson argues in effect that the district court could not lawfully extend his sentence beyond 37 months. However, as we discuss in Section III.B, *infra*, Lawson's counsel was actually mistaken in believing that the properly calculated Guidelines range for Lawson's case was 30-37 months. It is 110-137 months.

jury failed to convict Lawson of an intent to distribute the crack cocaine found in the console, the government nonetheless proved by a preponderance of the evidence that Lawson possessed *all* of the drugs found in the car (including the larger amount of crack cocaine and the ecstasy pills) with an intent to distribute, and took this finding into account in calculating his sentence.

We have recently considered whether a sentence based on unconvicted conduct violates the Sixth Amendment. In *United States v. Dorcely*, 454 F.3d 366 (D.C. Cir. 2006), the appellant was convicted of making a false statement to the Federal Bureau of Investigation but was acquitted of two related conspiracy charges. *See id.* at 369. Although the recommended Guidelines range for the appellant's conviction was only 0-6 months, the district court, finding by a preponderance of evidence that the appellant was in fact involved in the conspiracies, sentenced him to 24 months. *See id.* Reading the Supreme Court's language in *Booker* as providing the sentencing court with discretion "broad enough to allow consideration of acquitted conduct so long as the court 'deems [it] relevant,'" *id.* at 371 (alteration in original), we held that "a sentencing court may base a sentence on acquitted conduct without offending the defendant's Sixth Amendment right to trial by jury." *Id.* Thus, we held that "consideration of acquitted conduct violated the Sixth Amendment only if the judge imposes a sentence that exceeds what the jury verdict authorizes." *Id.* at 371 (citing *Booker*, 542 U.S. at 244). In affirming the appellant's sentence, we joined five other circuits that had considered this question. *See id.* If it is permissible for a sentencing court to build a sentence, at least in part, on conduct for which a defendant is charged but acquitted, we find no error in relying on conduct for which Lawson was charged but on which the jury deadlocked, provided, as here, the court determined by a preponderance of the evidence that he engaged in the conduct.

## B.  The Reasonableness of the Sentence

Lawson also argues that his 144-month sentence is nearly four times greater than the maximum Guidelines sentence for the three crimes for which he was convicted and that the district court failed to provide a reasonable basis that would support this seemingly draconian upward deviation, relying instead on factors already included within the Guidelines calculations.  We have reviewed the Presentence Investigation Report and the transcripts from the two sentencing hearings the district court convened.  Because it is not clear from the record whether the district court in fact considered the appropriate Guidelines range for Lawson's crimes and his misconduct—a necessary threshold inquiry for our reasonableness review—we conclude that we cannot determine whether the sentence is reasonable or not.  In the absence of a clear explanation of how the district court arrived at his sentence, we cannot address Lawson's arguments that the sentence is unreasonable, and we therefore remand the case to the district court for re-sentencing.

Because "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness," *Dorcely*, 454 F.3d at 376 (citations omitted); *see also Rita v. United States*, 127 S. Ct. 2456, 168 L. Ed. 2d 203, 211 (2007) (holding that "a court of appeals may apply a presumption of reasonableness to a sentence that reflects a proper application of the [Guidelines]"), we begin our review by considering whether the sentencing court started its analysis from a properly calculated Guidelines range. *See Dorcely*, 454 F.3d at 375 ("In the post-*Booker* world, the [sentencing] court must calculate and consider the applicable Guidelines range but is not bound by it."); 18 U.S.C. § 3742(f) ("If the court of appeals determines that . . . the sentence was . . . imposed as a result of an incorrect application of the sentencing guidelines,

the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate."). If it did, we then review the sentence ultimately imposed "to ensure that it is reasonable in light of the sentencing factors that Congress specified in 18 U.S.C. § 3553(a)." *United States v. Price*, 409 F.3d 436, 442 (D.C. Cir. 2005); *Booker*, 543 U.S. at 261 ("Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.");[4] *see also United States v. Olivares*, 473 F.3d 1224, 1226 (D.C. Cir. 2006) (explaining that the court must determine that the Guidelines were correctly applied before it can review the reasonableness of the sentence in light of § 3553(a) factors).

With respect to Lawson's sentence, the Presentence Investigation Report prepared by the Probation Officer for the sentencing court initially recommended a Guidelines range of 110-137 months, based in part on the Report's conclusion that

---

[4] Section 3553(a) lists, *inter alia*, the following factors relevant to Lawson's sentence:

> the nature and circumstances of the offense and the history and characteristics of the defendant . . . , the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . , to afford adequate deterrence to criminal conduct . . . , to protect the public from further crimes of the defendant . . . , and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . , the kinds of sentences available . . ., [and] the need to provide restitution to any victims of the offense.

the "jury found Mr. Lawson responsible for the [11.7 g of] cocaine base recovered from within the console." Joint Appendix at 64. When Lawson challenged this calculation on the ground that he was only convicted of possessing the 1.4 g of crack cocaine and not the larger volume, the Probation Officer prepared an addendum to the Report that included an alternative calculation of Lawson's sentence, which did not include the 11.7 g. *Id.* at 64-65. The recommended range for Lawson's sentence under this second calculation was only 30-37 months. *Id.* at 65. At the final sentencing hearing, the district court nonetheless concluded that a preponderance of the evidence clearly established that Lawson possessed all the drugs found in Lawson's car with an intent to distribute.

This conclusion affects the applicable Guidelines range. The proper Guidelines calculations need not be limited to the charges for which the defendant has been convicted. They should include the relevant factors specified in the Guidelines and may include conduct for which the defendant was charged and but not convicted if it appears by a preponderance of the evidence that he engaged in the conduct. *See, e.g.*, *United States v. Long*, 328 F.3d 655, 670 (D.C. Cir. 2003) (holding that the preponderance of the evidence standard applies to calculating the proper Guidelines range (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91-92 (1986))); *see also* U.S.S.G. § 1B1.3, cmt. background (2006) ("Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range . . . . Relying on the entire range of conduct . . . appears to be the most reasonable approach to writing workable guidelines for these offenses."). In other words, where the court finds by a preponderance of evidence that the defendant was engaged in the conduct for which he was charged, this finding becomes a factor in determining the properly calculated Guidelines range. *See, e.g.*, *United States v. Boney*, 977 F.2d 624, 644-45 (D.C.

Cir. 1992) (where defendant was convicted of distribution of 0.199 g of crack cocaine but was acquitted of possessing 12.72 g of additional crack cocaine found underneath his pickup truck, the district court, upon finding defendant guilty by a preponderance of evidence, could properly include the 12.72 g of crack cocaine charge in calculating the Guidelines range). We have previously found this approach to be constitutionally permissible. *See id.*; *see also Long*, 328 F.3d at 670.

Based on our review of the record, we believe that the district court should have figured Lawson's possession of the 11.7 g of crack cocaine into its calculation of the appropriate Guidelines range from which it could then determine a reasonable sentence.[5]  In fact, the district court noted this possibility at Lawson's first sentencing hearing:

> [Lawson's other conduct] can be factored into what the Guidelines calculation is because even though he may not be found guilty, if I conclude that there are circumstances that, nonetheless, show that he did possess the other drugs, by a preponderance standard, that still can be used in the calculation.

1/12/06 Tr. at 6.  We have not, however, been able to find anywhere in the record where the sentencing court stated or even implied that it used a Guidelines range that took into account

---

[5] Our discussion focuses solely on Lawson's possession with intent to distribute crack cocaine.  Although the district court also concluded that he intended to distribute the other drugs in the car, Lawson's possession of those drugs would not affect a Guidelines calculation that had already taken into account the amount of crack cocaine found in his car. *See* Joint Appendix at 21; *see also* U.S.S.G. § 2D1.1, § 3D1.2(d), § 3D1.3, § 3D1.4.

Lawson's possession of the 11.7 g. Had it done so, the recommended Guidelines range for Lawson's sentence would increase from 30-37 months to 110-137 months, as the Probation Officer had initially calculated. With that range as the starting point for its analysis, the court should have then considered whether the § 3553(a) factors warrant a sentence either within or outside this range.

Unfortunately, the record is muddled as to whether the district court considered this starting point for its analysis. If pressed, we would be forced to determine on an inconclusive record that the district court used the 30-37 month range of the Report's addendum as the stepping off point for its analysis. In objecting to the sentence, Lawson's counsel noted that the base offense level should have been 14, which corresponds to a sentence range of 30-37 months. *See* 2/3/06 Tr. at 3-4. The court did not counter this argument by noting that his base offense level should have been 28 based on his possession of the additional 11.7 g of crack cocaine, which is consistent with a Guidelines range of 110-137 months. Instead, the court merely noted that "the Guidelines aren't mandatory" and that "the Guidelines, as calculated, don't accurately reflect the seriousness of the conduct [Lawson] was convicted of." 2/3/06 Tr. at 4. But we will not determine the reasonableness of a prison sentence on such speculation. Without knowing the point at which the sentencing court began its calculation, we cannot address Lawson's argument that his was unreasonable. We therefore remand this matter to the district court to explain from which Guidelines range it began its calculation, and only then, *see, e.g.*, *Dorcely*, 454 F.3d at 375, can we determine whether the § 3553(a) factors invoked by the court reasonably justify the sentence ultimately imposed. *See, e.g.*, *United States v. Simpson*, 430 F.3d 1177, 1187 n.10 (D.C. Cir. 2005) ("[T]he farther the judge's sentence departs from the guidelines sentence . . . , the more compelling the justification based on

factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005))).

## III.

For the foregoing reasons, we affirm Lawson's conviction on all grounds, but vacate Lawson's sentence and remand the case to the district court to make explicit the applicable Guidelines range and how its consideration of the required factors under § 3553(a) affected its departure from or adherence to that range.

*So ordered.*