# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 13, 2013          Decided March 14, 2014

No. 08-3033

UNITED STATES OF AMERICA,
APPELLEE

v.

JOSEPH JONES, ALSO KNOWN AS JO JO,
APPELLANT

———

Consolidated with 10-3108, 11-3031

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:05-cr-00100-16)

———

*Stephen C. Leckar*, appointed by the court, argued the cause and filed the joint brief for appellant Antwuan Ball.

*Anthony D. Martin*, appointed by the court, argued the cause and filed the joint brief for appellant Joseph Jones.

*Jonathan Zucker*, appointed by the court, argued the cause and filed the joint brief for appellant Desmond Thurston.

*Jeffrey T. Green*, *Timothy O'Toole*, and *Arthur B. Spitzer* were on the brief for *amici curiae* The National Association of Criminal Defense Lawyers, et al. in support of appellants.

*Stratton C. Strand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, Assistant U.S. Attorney.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Following a lengthy trial, a jury convicted Joseph Jones, Desmond Thurston, and Antwuan Ball of distributing small quantities of crack cocaine, but acquitted them of conspiracy to distribute drugs. At sentencing, the district court nevertheless found that all three defendants had engaged in the charged conspiracy and, based largely on that finding, sentenced them to terms of imprisonment ranging from fifteen to nearly nineteen years. They now appeal, arguing that their sentences were procedurally and substantively unreasonable and were unconstitutionally predicated upon acquitted conduct. Thurston and Ball also argue that the district court impermissibly delayed sentencing them. Finding no merit in appellants' arguments, we affirm.

I

In 2005, a grand jury charged appellants and fifteen named coconspirators with narcotics and racketeering offenses arising from their alleged membership in the Congress Park Crew, a loose-knit gang that ran a market for

crack cocaine in the Congress Park neighborhood of Southeast Washington, D.C., for nearly thirteen years. After eleven of the coconspirators pled guilty and one was convicted at a trial of his own, appellants proceeded to their trial in February 2007 on charges that included crack distribution and participation in a crack distribution conspiracy.[1] The government's evidence included recordings of appellants engaging in sales of crack and testimony from several cooperating witnesses, including members of the alleged conspiracy and individuals who had purchased crack from appellants. On November 28, 2007, the jury returned its verdict, acquitting appellants of the conspiracy charge but convicting them of distribution. Based on appellants' criminal records, Jones's conviction carried a maximum sentence of thirty years' imprisonment and Thurston's a maximum of twenty years. Because of the larger quantity of crack involved, Ball's conviction carried a minimum of five years and maximum of forty years. *See* 21 U.S.C. § 841(b)(1)(B)(iii), (C).

At Jones's sentencing in May 2008, the district court found by a preponderance of the evidence that his crimes were part of a common scheme to distribute crack in Congress Park and that he could foresee sales of over 500 grams of crack by his coconspirators. Based on these findings, the district court determined that the U.S. Sentencing Guidelines recommended a sentence of 324 to 405 months' imprisonment. The court then imposed an actual sentence of

---

[1] The government also charged Jones and Ball with various violent crimes and all three appellants with participation in a racketeer influenced corrupt organization. Those charges are not relevant to this appeal, however, because the jury acquitted appellants of those charges, and the district court did not rely on the alleged conduct underlying them at sentencing.

only 180 months, varying below the Guidelines due to concerns about the overall severity of punishments for crack offenses and considerations related to Jones's background and crimes more particularly.

Thurston was sentenced on October 29, 2010, some 35 months after the jury's verdict, and Ball was sentenced on March 17, 2011, some 40 months after. Although the district court originally planned to sentence Thurston and Ball around the same time as Jones, it postponed their sentencing hearings after a co-defendant, who is not a party to this appeal, filed a post-trial motion that the district court believed might affect their convictions but that ultimately did not. That motion, which was filed in March 2008, was not resolved until July 2010. During that period, Thurston and Ball repeatedly requested sentencing.

At sentencing, the district court found that their crimes, like Jones's, were part of a conspiracy to distribute crack in Congress Park and that they could foresee that their coconspirators would distribute at least one-and-a-half kilograms of crack. Based primarily on those findings, the district court calculated Thurston's Guidelines range as 262 to 327 months and Ball's as 292 to 365 months. Varying below the Guidelines again, the district court sentenced Thurston to 194 months and Ball to 225 months. The district court justified these downward variances on grounds similar to those given at Jones's sentencing. The district court also explained that it was reducing Thurston's sentence by another twelve months, and Ball's by another fifteen, to remedy any prejudice from the delays in their sentencings.

Appellants timely appealed their sentences, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

5

II

We use a two-step analysis to review sentences. *See Gall v. United States*, 552 U.S. 38, 51 (2007). At the first step, we ensure that the district court committed no significant procedural error in determining the Guidelines ranges, such as calculating them based on factual findings that are clearly erroneous. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008). We review purely legal questions de novo and factual findings for clear error, and we give "due deference" to the district court's application of the Guidelines to facts. *United States v. Henry*, 557 F.3d 642, 645 (D.C. Cir. 2009). At the second step, we consider the substantive reasonableness of the sentences in light of the totality of the circumstances, reversing only if we conclude that the district court abused its discretion. *See Gall*, 552 U.S. at 51; *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).

A

Appellants challenge the procedural reasonableness of their sentences principally on the ground that it was clear error for the district court to find that they had formed an agreement with members of the Congress Park Crew to distribute crack. *See United States v. Graham*, 83 F.3d 1466, 1471 (D.C. Cir. 1996) ("The essential element of conspiracy is an agreement with at least one other person to violate the law."). Under the clear error standard, we must affirm the district court's findings unless we are "'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Brockenborrugh*, 575 F.3d 726, 738 (D.C. Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also United States v. Mohammed*, 693 F.3d 192, 202 (D.C. Cir. 2012) (holding that a district court's factual findings were not clearly erroneous where the

inferences it drew from evidence were "plausible"). We give especially strong deference to credibility determinations, *see United States v. Delaney*, 651 F.3d 15, 18 (D.C. Cir. 2011), because the district court has a "unique opportunity 'to evaluate the credibility of witnesses and to weigh the evidence,'" *Brockenborrugh*, 575 F.3d at 738 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).

Appellants argue that the district court should not have credited the testimony of the cooperators, whom they describe as a rogues' gallery unworthy of credence. Appellants catalog evidence that the cooperators repeatedly deceived authorities, perjured themselves, framed loved ones, abused drugs, breached plea agreements, and took money from the government. But while such facts may undercut the cooperators' credibility generally, they do not establish that it was implausible for the district court to credit particular aspects of their testimony, especially where, as here, the cooperators offered mutually corroborative accounts that appellants associated with named conspirators, sold crack in Congress Park during the period of the conspiracy, shared sales proceeds with other conspirators, and protected their control of the Congress Park drug trade against outside competitors. *Cf. Graham*, 83 F.3d at 1471-72 (rejecting sufficiency of the evidence challenge to narcotics conspiracy conviction where the government's evidence consisted of testimony from six cooperating drug dealers, all of whom vouched for the existence of a conspiracy and testified that the defendants were part of it). Indeed, for each of these critical facts concerning appellants' involvement in the conspiracy, the district court relied *only* on testimony corroborated by at least one, and usually several, other witnesses.

Furthermore, the district court was well aware of the cooperators' credibility issues. For instance, the court declined to impose an obstruction-of-justice enhancement on Ball based solely on one cooperator's "uncorroborated report." At the same time, the court explained that even giving "full effect" to appellants' impeachment of several cooperators would "not undermine the mutually corroborative evidence[]" establishing appellants' involvement in the conspiracy. Given the highly corroborated accounts of appellants' conspiratorial conduct and the district court's evident care in weighing the evidence, it was not clearly erroneous to find that appellants had conspired to distribute crack in Congress Park.

Nor was it clearly erroneous for the district court to find that the evidence established a single conspiracy—a finding appellants challenge in hopes of reducing the amount of crack sales attributable to them. In determining whether evidence establishes single or multiple conspiracies, we look for the presence of a number of factors, including, in descending order of importance, a common goal, interdependence among alleged participants, and overlapping membership. *See Graham*, 83 F.3d at 1471; *United States v. Tarantino*, 846 F.2d 1384, 1393 (D.C. Cir. 1988) (per curiam). Appellants argue that the cooperators' testimony established, at most, multiple drug cliques operating at different periods and comprising different members. But the evidence cited by the district court at sentencing establishes all three attributes of a single conspiracy: a common goal of selling crack for profit in Congress Park; interdependence in the forms of shared sales proceeds and the protection of turf against encroachment by outsiders; and overlap in membership both across time and among the different cliques. Given that we have found a single drug conspiracy even where the conspirators did not share profits with one another and "sometimes competed with

each other for sales," *Graham*, 83 F.3d at 1471, the degree of interdependence and overlap supports the district court's finding that appellants engaged in a single conspiracy with the other members of the Congress Park Crew.

Appellants' remaining challenges to the procedural reasonableness of their sentences need be addressed only briefly. They assert that the district court failed to show that the acts of coconspirators attributed to them met the Guidelines' definition of "relevant conduct." *See* U.S.S.G. § 1B1.3 (instructing courts to consider "relevant conduct" in determining Guidelines ranges). But "relevant conduct" includes acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction," *id.* § 1B1.3(a)(2), and here, the district court specifically found that appellants' crack distribution offenses were part of a "common scheme" with Congress Park Crew members, a finding that we have already determined was not clearly erroneous. Appellants also challenge the district court's reliance on hearsay implicating them in the Congress Park Crew's drug dealing, but such reliance poses no legal problem. Clear precedent permits hearsay to be used in sentencing decisions, *United States v. Bras*, 483 F.3d 103, 108 (D.C. Cir. 2007); *see also* 18 U.S.C. § 3661, and the testimony cited by the district court, which came from guilty plea proffers, was but one piece of a larger mosaic of evidence establishing appellants' participation in a drug conspiracy.

B

Appellants challenge the substantive reasonableness of their sentences solely on the ground that their sentences far exceeded the norm for their crimes. But the average and median figures appellants cite reveal neither the full range of

sentences meted out for their crimes nor how differences in individual levels of culpability affect variations in sentencing. Appellants' Guidelines ranges, by contrast, reflect individualized assessments of their conduct, and those ranges, which were properly calculated, called for sentences significantly higher than those appellants actually received. Because it is well established that sentences that fall within the Guidelines range are entitled to a presumption of reasonableness, *see United States v. Fields*, 699 F.3d 518, 524 (D.C. Cir. 2012) (citing *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006)), it is "hard to imagine" how we could find appellants' below-Guidelines sentences to be unreasonably high, *United States v. Mejia*, 597 F.3d 1329, 1343 (D.C. Cir. 2010); *see also United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of below-range sentences that would be unreasonably high."). Appellants fail to show that their case is exceptional, and we reject their challenges.

III

Appellants also argue that their sentences violated their Sixth Amendment right to trial by jury because they were based, in part, on appellants' supposed involvement in the very conspiracy that the jury acquitted them of participating in. Take their acquitted conduct out of the calculation, they contend, and their Guidelines ranges would have been between 27 and 71 months, a mere fraction of the sentences they received.

Although we understand why appellants find sentencing based on acquitted conduct unfair, binding precedent of this court establishes that the practice does not violate the Sixth Amendment when the conduct is established by a preponderance of the evidence and the sentence does not

exceed the statutory maximum for the crime. *See United States v. Settles*, 530 F.3d 920, 923-24 (D.C. Cir. 2008) (citing *United States v. Watts*, 519 U.S. 148, 156-57 (1997) (per curiam)); *Dorcely*, 454 F.3d at 371 ("[A] sentencing court may base a sentence on acquitted conduct without offending the defendant's Sixth Amendment right to trial by jury."). This is true even when consideration of the acquitted conduct multiplies a defendant's sentence severalfold. *See Dorcely*, 454 F.3d at 370-71. Appellants, in effect, ask us to reconsider *Settles* and *Dorcely*. But not only do those decisions bind us, *see LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc), no subsequent decision by the Supreme Court or another circuit calls their validity into question. *Cf.* FED. R. APP. P. 35(b)(1) (suggesting contrary decisions by the Supreme Court or by another court of appeals as grounds for en banc review). Indeed, since the Supreme Court struck down the mandatory federal sentencing guidelines and freed judges "to exercise broad discretion in imposing a sentence within a statutory range," *United States v. Booker*, 543 U.S. 220, 233, 243-44 (2005), every numbered circuit has addressed the constitutionality of sentencing based on acquitted conduct, and each one has reached the same conclusion reached by this court. *See United States v. White*, 551 F.3d 381, 384-86 (6th Cir. 2008) (en banc); *United States v. Mercado*, 474 F.3d 654, 656-58 (9th Cir. 2007) (collecting cases from every numbered circuit but the Sixth).

We also lack any basis to reconsider the settled rule that enhancing a sentence within the statutory range based on facts found by the judge, as opposed to the jury, does not violate the Sixth Amendment. *See Settles*, 530 F.3d at 923; *Bras*, 483 F.3d at 107. Appellants' challenge to this practice relies principally on Justice Scalia's concurrence in *Rita v. United States*, 551 U.S. 338 (2007), which suggested that defendants should be permitted to challenge sentences that depend on

judge-found facts to survive substantive reasonableness review. *See Rita*, 551 U.S. at 375 (Scalia, J., concurring) (reading the majority's opinion as not "rul[ing] out . . . Sixth Amendment challenges to sentences that would not have been upheld as reasonable on the facts encompassed by the jury verdict or guilty plea"); *see also Gall v. United States*, 552 U.S. 38, 60 (2007) (Scalia, J., concurring).

Whatever the merits of Justice Scalia's argument, it is not the law. *See Rita*, 551 U.S. at 352 (majority opinion) ("This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence."). No Supreme Court majority has ever recognized the validity of such challenges, and among the courts of appeals the consensus is clearer still: every circuit to have considered such challenges has rejected them as inconsistent, in principle, with the post-*Booker* rule that "[f]or Sixth Amendment purposes, the relevant upper sentencing limit established by the jury's finding of guilt is . . . the *statutory* maximum, not the advisory Guidelines maximum corresponding to the base offense level." *Settles*, 530 F.3d at 923; *see United States v. Norman*, 465 F. App'x 110, 120-21 (3d Cir. 2012) (collecting cases). And though our circuit has not specifically considered such challenges, our precedent is equally categorical: judicial fact-finding does "not implicate the Sixth Amendment even if it yield[s] a sentence above that based on a plea or verdict alone." *Bras*, 483 F.3d at 107 (internal quotation marks omitted). Accordingly, we must reject appellants' Sixth Amendment claims. The district court did not violate their right to trial by jury by sentencing them within the statutory range based on acquitted conduct that it found by a preponderance of the evidence.

12

IV

Finally, Thurston and Ball argue that the district court violated their assumed right to speedy sentencing and ask that their sentences be reduced accordingly. Both the Supreme Court and this circuit have assumed without deciding that the Sixth Amendment protects the right to speedy sentencing. *See Pollard v. United States*, 352 U.S. 354, 361 (1957); *United States v. Yelverton*, 197 F.3d 531, 533 (D.C. Cir. 1999). We determine whether such a right was violated by balancing the four factors enumerated in *Barker v. Wingo*: the "'[l]ength of [] delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *United States v. Gibson*, 353 F.3d 21, 27 (D.C. Cir. 2003) (first alteration in original) (quoting *Barker*, 407 U.S. 514, 530 (1972)).[2]

Here, however, we need not decide whether Thurston and Ball suffered a constitutional injury because we find that even if they did, the sentence reductions they received were adequate remedies. In *Yelverton*, we held that a reduction of "several months" was sufficient to remedy a 33-month delay where the defendant "ma[de] no claim that the delay affected

---

[2] Jones does not assert a speedy sentencing claim but suggests that the delays associated with Thurston and Ball's sentencings denied him the right to a speedy appeal. We decline to consider this issue, however, because Jones offers only "bare-bones arguments" unsupported by any citations to legal authority. *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997); *see also* FED. R. APP. P. 28(a)(8)(A) (requiring an appellant's brief to contain "appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies"); *Ry. Labor Execs.' Ass'n v. U.S. R.R. Ret. Bd.*, 749 F.2d 856, 859 n.6 (D.C. Cir. 1984) (declining to resolve issue "on the basis of briefing which consisted of only three sentences . . . and no discussion of the relevant statutory text, legislative history, or relevant case law").

his ability to present his position on his sentence or adversely affected the sentence he received." *Yelverton*, 197 F.3d at 538-39. Thurston and Ball similarly conceded at oral argument that the delay probably had little to no impact on the district court's conspiracy finding, which drove the high sentences they received. Oral Arg. Recording at 47:45-48:18. Accordingly, we find that the twelve- and fifteen-month reductions that Thurston and Ball respectively received were adequate remedies for any speedy sentencing violation they may have suffered.

V

For the foregoing reasons, we affirm appellants' sentences.