TORRUELLA, Circuit Judge
(Concurring).
I join the court’s opinion but write separately to note a disturbing trend in criminal prosecutions. All too often, prosecutors charge individuals with relatively minor crimes, carrying correspondingly short sentences, but then use section IB 1.3(a) of the Sentencing Guidelines (“Guidelines”) to argue for significantly enhanced terms of imprisonment under the guise of “relevant conduct” — other crimes that have not been charged (or, if charged, have led to an acquittal) and have not been proven beyond a reasonable doubt.[3]
*40 The instant case provides a typical example of this trend. St. Hill was arrested, charged, and pleaded guilty to distributing twenty oxycodone pills with a net weight of 0.56 grams. Applying the Guidelines to just this offense, St. Hill’s base offense level would have been 12. See U.S. Sentencing Guidelines Manual (“U.S.S.G.”) § 2Dl.l(e)(14) (2012). Assuming the district court’s other findings remained unchanged, St. Hill’s total offense level would have been reduced to 9. With this offense level, and a criminal history category of IV, the Guidelines would have yielded an advisory sentence of 2-8 months. See id. at Sentencing Table. However, due to three incidents of “relevant conduct” — (1) an alleged sale of 3.7 net grams of cocaine base to one confidential informant; (2) three alleged tenpill oxycodone sales totaling 0.9 grams to a second confidential informant; and (3) the 76.65 grams of wholesale oxycodone transactions that are at issue before the court[4] with a third confidential informant — his base offense level jumped to 28 and his resulting total offense level became 25. This equated to an advisory Guidelines sentence of 84-105 months of imprisonment.
In other words, St. Hill was subject to an additional six to eight years in prison due to isolated drug sales not directly related to the twenty oxycodone pills which led to his conviction, all of which he was never arrested for, never charged with, never pleaded guilty to, and never convicted of by a jury beyond a reasonable doubt. This is a prime example of the tail wagging the dog. Even more disturbing: the government could, if it so chooses, still charge St. Hill for these uncharged crimes in a separate proceeding, and he could be convicted and sentenced again without protection from the Double Jeopardy Clause. See Witte v. United States, 515 U.S. 389, 406, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (“Because consideration of relevant conduct in determining a defendant’s sentence within the legislatively authorized punishment range does not constitute punishment for that conduct, the instant prosecution does not violate the Double Jeopardy Clause’s prohibition against the imposition of multiple punishments for the same offense.”).
This is not to say that section lB1.3(a)’s “relevant conduct” considerations have no place in sentencing defendants. Nor is it to say that various other factors — such as a defendant’s prior convictions, remorse, family responsibilities, and civic contributions — are not appropriate sentencing considerations, or that they must be proven to a jury beyond a reasonable doubt. See 18 U.S.C. § 3553(a)(1) (2010) (“The court, in determining the particular sentence to be imposed, shall consider ... the history and characteristics of the defendant....”); U.S.S.G. § 4A1.1 (explaining how prior convictions are used to calculate a defendant’s criminal history category). Rather, the point is that if the government wishes to punish a defendant for certain alleged criminal conduct, then that conduct should be charged in an indictment.
*41 Using the “relevant conduct” enhancement on unrelated narcotics transactions simply because the transactions involve characteristics common to most, if not all, narcotics transactions in a given region— i.e., similar types of narcotics, comparable amounts of narcotics, comparable prices, a common geography, and occurring within a relatively short time frame (and not only hours or days but extending as long as weeks or months) — seems to go far beyond what the Guidelines intended. This is especially striking when one considers that the burden of proof for this “relevant conduct” is not the “beyond a reasonable doubt” standard required to convict at trial but rather the much lower “by a preponderance of the evidence” standard. Compare U.S.S.G. § 6A1.3 cmt. (“The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.”) with United States v. Alleyne, — U.S. —, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013) (“The Sixth Amendment. ... in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt.”). See also United States v. Watts, 519 U.S. 148, 156, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (citing the commentary to U.S.S.G. § 6A1.3 and stating that the Supreme Court has “held that application of the preponderance standard at sentencing generally satisfies due process”).
Put differently, if the government intends to seek an increase in a criminal defendant’s sentence for conduct that independently may be subject to criminal liability, the government should charge that conduct in the indictment. The Fifth Amendment requires that “[n]o person shall be ... deprived of life, liberty, or property, without due process of law,” U.S. Const, amend. V, while the Sixth Amendment provides an accused with the right to a trial “by an impartial jury,” id. amend. VI. The practice of arguing for higher sentences based on uncharged and untried “relevant conduct” for, at best, tangentially related narcotics transactions seems like an end-run around these basic constitutional guarantees afforded to all criminal defendants. Cf. Alleyne, 133 S.Ct. at 2162 (“When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury.”). The government’s role is to ensure justice, both to the accused and to the public at large; it is not to maximize conviction rates and argue for the greatest possible sentence. And, while it is unclear to me whether this trend is due to shaky police work resulting in cases that cannot be proven beyond a reasonable doubt, prosecutorial laziness, or other less nefarious factors, it remains troubling regardless.
I am hardly the first to notice or call attention to this injustice, and I am sure I will not be the last. See, e.g., United States v. Ritsema, 31 F.3d 559, 567 (7th Cir.1994) (“Our point is only that the relevant conduct provision, interpreted in an overly broad manner, has the potential of being a coarse instrument capable of causing years of serious incidental criminality to ride in at sentencing on the coattails of a relatively minor conviction.”); Susan N. Herman, The Tail that Wagged the Dog: Bifurcated Fact-Finding Under the Federal Sentencing Guidelines and the Limits of Due Process, 66 S. Cal. L.Rev. 289, 292 (1992) (“This system also imposes strict procedural obligations on prosecutors who wish to charge a defendant with a particular crime, but then provides them with a shortcut alternative means of having a defendant punished for an additional offense *42 that they might not have been able to prove beyond a reasonable doubt, so long as the defendant has been convicted of a related offense.”).[5]
Nevertheless, as a judge, it is my responsibility to faithfully apply the law as articulated by both the Supreme Court and this court, and I do not dispute that both the Guidelines and our interpretation of them currently condone this questionable process. See Witte, 515 U.S. at 396, 406 (finding no constitutional violation where the sentence was based in part on a cocaine offense that defendant “clearly was neither prosecuted for nor convicted of’); United States v. Lombard, 102 F.3d 1, 4 (1st Cir.1996) (finding no constitutional violation where the district court “choose[s] to give weight to the uncharged offenses in fixing the sentence within the statutory range if it finds by a preponderance of evidence that they occurred”). I nonetheless question whether this interpretation should be revisited-either by the courts or by revisions to the Guidelines.

. A petition for a writ of certiorari currently pending before the Supreme Court addresses a subset of these cases in which acquitted conduct — for which the jury explicitly found *40 the defendant not guilty- — is nonetheless used by the judge at sentencing to increase the defendant’s sentence. In United States v. Jones, petitioners argue for the ability to lodge an “as applied” challenge to the substantive reasonableness of their sentences. According to petitioners, their Guidelines ranges, and thus sentences, were significantly and unconstitutionally increased based solely on a judge-found fact which petitioners were acquitted of at trial — their involvement in the drag-related conspiracy. United States v. Jones, 744 F.3d 1362 (D.C.Cir.2014), petition for cert. filed, (U.S. May 6, 2014) (No. 13-10026).

. That St. Hill does not challenge two of the three incidents of "relevant conduct” does not make the practice any less disturbing.

. See also United States v. Kikumura, 918 F.2d 1084, 1119-21 (3d Cir.1990) (Rosenn, J., concurring) (expressing “concern that the Government’s manipulation of [the defendant’s] charge and sentencing illustrates the problem reported by many courts that the sentencing guidelines have replaced judicial discretion over sentencing with prosecutorial discretion,” which may violate a defendant's right to due process by allowing the government to “deliberately collateralize at the charge and trial stage the most critical element for [a defendant's] sentencing”), overruled by United States v. Fisher, 502 F.3d 293 (3d Cir.2007); Fed.Crim. Procedure Comm. of the Am. Coll. of Trial Lawyers, The American College of Trial Lawyers Proposed Modifications to the Relevant Conduct Provisions of the United States Sentencing Guidelines, 38 Am.Crim. L.Rev. 1463, 1465 (2001) ("[T]he Committee asserts that defendants who are charged and convicted of particular criminal offenses should have their sentences primarily based upon those offenses, not offenses which the prosecutor has elected not to charge or try to a judge or jury or of which they have been acquitted.”); id. at 1484 & n. 150 (collecting cases in which “judges have recognized that ... the operation of the relevant conduct rules is unjust from the perspective of an ordinary citizen and therefore invites disrespect for the law”).