# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

FILED: DECEMBER 22, 2015

No. 08-3037

UNITED STATES OF AMERICA,
APPELLEE

v.

GREGORY BELL, ALSO KNOWN AS BOY-BOY,
ALSO KNOWN AS BUNGA,
APPELLANT

———

Consolidated with 11-3032

———

On Petitions for Rehearing En Banc

———

Before: GARLAND, *Chief Judge*; HENDERSON, ROGERS, TATEL, BROWN, GRIFFITH, KAVANAUGH*, SRINIVASAN, MILLETT**, PILLARD, and WILKINS, *Circuit Judges.*

# **O R D E R**

Upon consideration of the petitions of appellant Bell in No. 08-3037 and appellant Wilson in No. 11-3032 for rehearing en banc, the responses thereto, and the absence of a request by any member of the court for a vote, it is

**ORDERED** that the petitions be denied.

### **Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Ken Meadows
Deputy Clerk

\*   A statement by Circuit Judge Kavanaugh, concurring in the denial of the petition of appellant Bell in No. 08-3037, is attached.

\*\* A statement by Circuit Judge Millett, concurring in the denial of the petition of appellant Bell in No. 08-3037, is attached.

KAVANAUGH, *Circuit Judge*, concurring in the denial of rehearing en banc: Judge Millett's thoughtful concurrence in the denial of rehearing en banc highlights one of the oddities of sentencing law that has long existed and that remains after *United States v. Booker*, 543 U.S. 220 (2005). I write separately to underscore that the problem identified by Judge Millett may be addressed by individual district judges at sentencing.

Here's the issue: Based on a defendant's conduct apart from the conduct encompassed by the offense of conviction – in other words, based on a defendant's uncharged or acquitted conduct – a judge may impose a sentence higher than the sentence the judge would have imposed absent consideration of that uncharged or acquitted conduct. The judge may do so as long as the factual finding regarding that conduct does not increase the statutory sentencing range for the offense of conviction alone. The Sixth Amendment's Jury Trial Clause is deemed satisfied because the judge's factual finding does not increase the statutory sentencing range established by the jury's finding of guilt on the offense of conviction. *See Booker*, 543 U.S. at 267 (remedial opinion). And the Fifth Amendment's Due Process Clause is deemed satisfied because a judge finds the relevant conduct in a traditional adversarial procedure. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91-93 (1986).

Judge Millett cogently expresses her concern about sentencing judges' reliance on acquitted conduct at sentencing. Even though the Sentencing Guidelines are now advisory, rather than mandatory, she advocates barring consideration of acquitted conduct in calculating the advisory Guidelines offense level.

I share Judge Millett's overarching concern about the use of acquitted conduct at sentencing, as I have written before. *See, e.g.*, *United States v. Settles*, 530 F.3d 920, 923-24 (D.C. Cir. 2008); *see also United States v. Henry*, 472 F.3d 910, 918-22 (D.C. Cir. 2007) (Kavanaugh, J., concurring). Of course, resolving that concern as a constitutional matter would likely

require a significant revamp of criminal sentencing jurisprudence – a revamp that the Supreme Court lurched toward in cases such as *Blakely v. Washington*, 542 U.S. 296 (2004), but backed away from in its remedial opinion in *Booker*.

Taken to its logical conclusion, the *Blakely* approach would require a jury to find beyond a reasonable doubt the conduct used to set or increase a defendant's sentence, at least in structured or guided-discretion sentencing regimes. A judge could not rely on acquitted conduct to increase a sentence, even if the judge found the conduct proved by a preponderance of the evidence. A judge likewise could not rely on uncharged conduct to increase a sentence, even if the judge found the conduct proved by a preponderance of the evidence.

At least as a matter of policy, if not also as a matter of constitutional law, I would have little problem with a new federal sentencing regime along those lines. Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial. If you have a right to have a jury find beyond a reasonable doubt the facts that make you guilty, and if you otherwise would receive, for example, a five-year sentence, why don't you have a right to have a jury find beyond a reasonable doubt the facts that increase that five-year sentence to, say, a 20-year sentence? *Cf. In re Winship*, 397 U.S. 358 (1970).

But that would be a constitutional rule far different from the one we now have or have historically had. As the Supreme Court has said many times: "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge

deems relevant." *Booker*, 543 U.S. at 233; *see also Williams v. New York*, 337 U.S. 241, 246-52 (1949). To quote a recent case: "While such findings of fact may lead judges to select sentences that are more severe than the ones they would have selected without those facts, the Sixth Amendment does not govern that element of sentencing. . . . We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Alleyne v. United States*, 133 S. Ct. 2151, 2161 n.2, 2163 (2013).

Given the Supreme Court's case law, it likely will take some combination of Congress and the Sentencing Commission to *systematically* change federal sentencing to preclude use of acquitted or uncharged conduct.

Importantly, however, even in the absence of a change of course by the Supreme Court, or action by Congress or the Sentencing Commission, federal district judges have power in individual cases to disclaim reliance on acquitted or uncharged conduct. To be sure, when calculating the advisory Guidelines range, district judges may have to factor in relevant conduct, including acquitted or uncharged conduct. But those Guidelines are only advisory, as the Supreme Court has emphasized. So district judges may then vary the sentence downward to avoid basing any part of the ultimate sentence on acquitted or uncharged conduct. In other words, individual district judges possess the authority to address the concern articulated by Judge Millett. *See generally Rita v. United States*, 551 U.S. 338, 350-56 (2007); *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *Kimbrough v. United States*, 552 U.S. 85, 108-10 (2007); *United States v. White*, 551 F.3d 381, 386 (6th Cir. 2008); *cf. United States v. Gardellini*, 545 F.3d 1089, 1091-97 (D.C. Cir. 2008). In my view, district judges would do well to heed Judge Millett's concern in appropriate cases.

MILLETT, *Circuit Judge*, concurring in the denial of rehearing en banc:  This case is one in an "unbroken string of cases" encroaching on the Sixth Amendment right to a trial by jury, *Jones v. United States*, 135 S. Ct. 8, 9 (2014) (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from the denial of certiorari).  The government indicted Gregory Bell for a "mélange" of crimes, "including conspiracy and crack distribution."  Panel Op. 2.  Bell exercised his constitutional right to a trial by jury on those charges, and the jury acquitted Bell of ten of the thirteen charges against him, "including all narcotics and racketeering conspiracy charges."  Panel Op. 3.  The jury convicted Bell of only three crack cocaine distribution charges that together added up to just 5 grams.

Because Bell had no significant criminal history and the amount of cocaine was relatively small, Bell's Sentencing Guidelines range for the offense of conviction would have been 51 to 63 months.  At sentencing, however, the district court found that Bell *had* engaged in the very cocaine conspiracy of which the jury had acquitted him, and sentenced Bell to 192 months in prison—a sentence that was over 300% above the top of the Guidelines range for the crimes of which he was actually convicted.

In a constitutional system that relies upon the jury as the "great bulwark of [our] civil and political liberties," *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (quoting 2 J. Story, *Commentaries on the Constitution of the United States* 540–541 (4th ed. 1873)), it is hard to describe Bell's sentence as anything other than a "perverse result," *United States v. Watts*, 519 U.S. 148, 164 (1997) (Stevens, J., dissenting).  The foundational role of the jury is to stand as a neutral arbiter between the defendant and a government bent on depriving him of his liberty.  But when the central justification the government offers for such an extraordinary increase in the length of imprisonment is the very conduct for which the jury

acquitted the defendant, that liberty-protecting bulwark becomes little more than a speed bump at sentencing.

The problem here is not so much the panel opinion. The decision applies prior precedent from this circuit (consistent with that of other circuits) establishing that—at least as a general rule—"a sentencing court may base a sentence on acquitted conduct without offending the defendant's Sixth Amendment right to trial by jury." *United States v. Dorcely*, 454 F.3d 366, 371 (D.C. Cir. 2006). I agree with Justices Scalia, Thomas, and Ginsburg, though, that the circuit case law's incursion on the Sixth Amendment "has gone on long enough," *Jones*, 135 S. Ct. at 9 (dissenting from denial of certiorari); *see also Watts*, 519 U.S. at 170 (Kennedy, J., dissenting) ("At the least it ought to be said that to increase a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of acquittal."). For multiple reasons, the time is ripe for the Supreme Court to resolve the contradictions in Sixth Amendment and sentencing precedent, and to do so in a manner that ensures that a jury's judgment of acquittal will safeguard liberty as certainly as a jury's judgment of conviction permits its deprivation.

*First*, allowing a judge to dramatically increase a defendant's sentence based on jury-acquitted conduct is at war with the fundamental purpose of the Sixth Amendment's jury-trial guarantee. The Constitution affords defendants the "right to a speedy and public trial, by an impartial jury." U.S. CONST. Amend. VI. That right is "designed to guard against a spirit of oppression and tyranny on the part of rulers[.]" *United States v. Gaudin*, 515 U.S. 506, 510–511 (1995) (quotation marks omitted); *see also Duncan v. Louisiana*, 391 U.S. 145, 155 (1968) ("A right to jury trial is granted to criminal defendants in order to prevent oppression by the

3

Government."). Accordingly, before depriving a defendant of liberty, the government must obtain permission from the defendant's fellow citizens, who must be persuaded themselves that the defendant committed each element of the charged crime beyond a reasonable doubt. That jury-trial right is "no mere procedural formality," but rather a "fundamental reservation of power in our constitutional structure." *Blakely v. Washington*, 542 U.S. 296, 306 (2004).

Yet as the law now stands, prosecutors can brush off the jury's judgment by persuading judges to use the very same facts the jury rejected at trial to multiply the duration of a defendant's loss of liberty threefold. In that regime, the jury is largely "relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish" at sentencing. *Blakely*, 542 U.S. at 307.

To be sure, the Supreme Court has generally permitted judicial fact-finding by a preponderance of the evidence at sentencing that goes beyond what the jury's verdict encompasses, including facts about character, criminal history, cooperation, and even some unadjudicated conduct. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) ("Sentencing factors * * * can be proved to a judge at sentencing by a preponderance of the evidence."). But allowing judges to materially increase the length of imprisonment based on facts that were *submitted directly to and rejected by* the jury in the same criminal case is too deep of an incursion into the jury's constitutional role. "[W]hen a court considers acquitted conduct it is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved." *United States v. Pimental*, 367 F. Supp. 2d 143, 152 (D. Mass.

2005); *see also United States v. DiFrancesco*, 449 U.S. 117, 129 (1980) ("An acquittal is accorded special weight."); *United States v. Scott*, 437 U.S. 82, 91 (1978) ("[T]he law attaches particular significance to an acquittal.").

The oft-voiced response, of course, is that the different treatment arises because a jury must find that the defendant committed charged conduct beyond a reasonable doubt, while a judge is permitted to find conduct relevant to sentencing under the lesser preponderance-of-the-evidence standard. The problem with relying on that distinction in this setting is that the whole reason the Constitution imposes that strict beyond-a-reasonable-doubt standard is that it would be constitutionally intolerable, amounting "to a lack of fundamental fairness," for an individual to be convicted and then "imprisoned for years on the strength of the same evidence as would suffice in a civil case." *In re Winship*, 397 U.S. 358, 364 (1970). In other words, proof beyond a reasonable doubt is what we demand from the government as an indispensable precondition to *depriving an individual of liberty for the alleged conduct*. Constructing a regime in which the judge deprives the defendant of liberty on the basis of the very same factual allegations that the jury specifically found did not meet our constitutional standard for a deprivation of liberty puts the guilt and sentencing halves of a criminal case at war with each other.

The other explanation commonly proffered is that, as long as the final sentence does not exceed the statutorily authorized maximum length of incarceration for the offense of conviction, the defendant is only being sentenced for the crime he committed. That blinks reality when, as here, the sentence imposed so far exceeds the Guidelines range warranted for the crime of conviction itself that the sentence would likely be substantively unreasonable unless the

acquitted conduct is punished too. After all, "it is not the abstract dignity of the statutory maximum that is at stake in the Supreme Court's Sixth Amendment jurisprudence, but the integrity of the jury right itself, the cornerstone of our criminal justice system." *United States v. Faust*, 456 F.3d 1342, 1350 (11th Cir. 2006) (Barkett, J., concurring specially).

*Second*, while the panel understandably rows with the tide of past decisions allowing the use of acquitted conduct at sentencing, my reading of more recent Sixth Amendment precedent from the Supreme Court casts substantial doubt on the continuing vitality of that categorical rule, at least when acquitted conduct causes a dramatic and otherwise substantively unreasonable increase in a sentence. In *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the Court held that the Sixth Amendment does not allow a judge, absent a jury, to find any fact that "alter[s] the prescribed range of sentences to which a defendant is exposed and do[es] so in a manner that aggravates the punishment." *Id.* at 2158. In so holding, the Court rejected the rule in *Harris v. United States*, 536 U.S. 545 (2002), that allowed judges to find facts which increased a defendant's mandatory minimum sentence, but not the maximum sentence. *Id.* at 2158.

While *Alleyne*'s requirement that the jury, not a judge, find facts fixing the permissible sentencing range applies to *statutory* limitations, it is hard to understand why the same principle would not apply to dramatic departures from the Sentencing Guidelines range based on acquitted conduct. After all, the Supreme Court has held that, as a matter of law, a sentence within the Guidelines range is presumptively reasonable and lawful, and any "major departure" from that range requires "significant justification." *Gall v. United States*, 552 U.S. 38, 50, 51 (2007); *see also id.* at 49 ("[A]

district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and if a sentence falls within the Guidelines range, "the appellate court may * * * apply a presumption of reasonableness.").

Because the Sentencing Guidelines have "force as the framework for sentencing," *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013), and because, in the usual case, "the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range," *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011), the Guidelines demark the de facto boundaries of a legally authorized sentence in the mine run of cases. Given that reality, the Sixth Amendment should not tolerate the use of acquitted conduct specifically rejected by the jury to provide the required "significant justification" for tripling a defendant's sentence. *See Jones*, 135 S. Ct. at 8–9 (Scalia, J., joined by Thomas and Ginsburg, JJ., dissenting from the denial of certiorari) ("It unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It *may not* be found by a judge," especially when "a jury *acquitted* them of that offense.").

*Third*, the Constitution generally affords the prosecution one shot at convicting a defendant of charged conduct. But counting acquitted conduct at sentencing gives the government a second bite at the apple. Sentencing has become the forum in which the prosecutor asks the judge to multiply a defendant's sentence many times over based on conduct for which the defendant was just acquitted by the jury. *See United States v. Canania*, 532 F.3d 764, 776 (8th Cir. 2008) (Bright, J., concurring) ("[W]e have a sentencing regime that allows the Government to try its case not once but

twice. The first time before a jury; the second before a judge.").

At the same time, factoring acquitted conduct into sentencing decisions imposes almost insurmountable pressure on defendants to forgo their constitutional right to a trial by jury. Defendants will face all the risks of conviction, with no practical upside to acquittal unless they run the board and are absolved of *all* charges.

In short, allowing jury-acquitted conduct to increase a defendant's sentence places defendants and their attorneys between a proverbial rock and a hard place: a hard-fought partial victory—even, as here, a substantial win on the majority of counts—can be rendered practically meaningless when that acquitted conduct nonetheless produces a drastically lengthened sentence. Even our court, though bound by precedent, has acknowledged the unfairness inherent in that result. *See, e.g.*, *United States v. Jones*, 744 F.3d 1362, 1369 (D.C. Cir.) ("[W]e understand why appellants find sentencing based on acquitted conduct unfair."), *cert. denied*, 135 S. Ct. 8 (2014); *United States v. Settles*, 530 F.3d 920, 923–924 (D.C. Cir. 2008) ("[W]e understand why defendants find it unfair for district courts to rely on acquitted conduct when imposing a sentence; and we know that defendants find it unfair even when acquitted conduct is used only to calculate an advisory Guidelines range because most district judges still give significant weight to the advisory Guidelines when imposing a sentence.").

\* \* \*

While I am deeply concerned about the use of acquitted conduct in this case, I concur in the denial of rehearing en banc. That is because only the Supreme Court can resolve the contradictions in the current state of the law, by either

"put[ting] an end to the unbroken string of cases disregarding the Sixth Amendment" or "eliminat[ing] the Sixth Amendment difficulty by acknowledging that all sentences below the statutory maximum are substantively reasonable." *Jones*, 135 S. Ct. at 9 (Scalia, J., joined by Thomas and Ginsburg, JJ., dissenting from denial of certiorari). Though I am not certain Bell's argument is directly foreclosed by Supreme Court precedent, my colleagues on the panel have done their best to navigate existing precedent, recognizing that the Supreme Court has thus far declined to address this issue. Going en banc would only delay affording the Supreme Court another opportunity to take up this important, frequently recurring, and troubling contradiction in sentencing law.