MILLETT, Circuit Judge,
concurring in the denial of rehearing en banc:
This case is one in an “unbroken string of cases” encroaching on the Sixth Amend *929 ment right to a trial by jury, Jones v. United States, — U.S. -, 135 S.Ct. 8, 9, 190 L.Ed.2d 279 (2014) (Scalia, J., joined by Thomas & Ginsburg, JJ., dissenting from the denial of certiorari). The government indicted Gregory Bell for a “mélange” of crimes, “including conspiracy and crack distribution.” Panel Op. 2. Bell exercised his constitutional right to a trial by jury on those charges, and the jury acquitted Bell of ten of the thirteen charges against him, “including all narcotics and racketeering conspiracy charges.” Panel Op. 3. The jury convicted Bell of only three crack cocaine distribution charges that together added up to just 5 grams.
Because Bell had no significant criminal history and the amount of cocaine was relatively small, Bell’s Sentencing Guidelines range for the offense of conviction would have been 51 to 63 months. At sentencing, however, the district court found that Bell had engaged in the very cocaine conspiracy of which the jury had acquitted him, and sentenced Bell to 192 months in prison' — a sentence that was over 300% above the top of the Guidelines range for the crimes of which he was actually convicted.
In a constitutional system that relies upon the jury as the “great bulwark of [our] civil and political liberties,” Apprendi v. New Jersey, 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (quoting 2 J. Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873)), it is hard to describe Bell’s sentence as anything other than a “perverse result,” United States v. Watts, 519 U.S. 148, 164, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (Stevens, J., dissenting). The foundational role of the jury is to stand as a neutral arbiter between the defendant and a government bent on depriving him of his liberty. But when the central justification the government offers for such an extraordinary increase in the length of imprisonment is the very conduct for which the jury acquitted the defendant, that liberty-protecting ' bulwark becomes little more than a speed bump at sentencing.
The problem here is not so much the panel opinion. The decision applies prior precedent from this circuit (consistent with that of other circuits) establishing that — at least as a general rule — “a sentencing court may base a sentence on acquitted conduct without offending the defendant’s Sixth Amendment right to trial by jury.” United States v. Dorcely, 454 F.3d 366, 371 (D.C.Cir.2006). I agree with Justices Sca-lia, Thomas, and Ginsburg, though, that the circuit case law’s incursion on the Sixth Amendment “has gone on long enough,” Jones, 135 S.Ct. at. 9 (dissenting from denial of certiorari); see also Watts, 519 U.S. at 170, 117 S.Ct. 633 (Kennedy, J., dissenting) (“At the least it ought to be said that to increase a sentence based on conduct underlying a charge for which the defendant was acquitted does raise concerns about undercutting the verdict of acquittal.”). For multiple reasons, the time is ripe for the Supreme Court to resolve the contradictions in Sixth Amendment and sentencing precedent, and to do so in a manner that ensures that a jury’s judgment of acquittal will safeguard liberty as certainly as a jury’s judgment of conviction permits its deprivation.
First, allowing a judge to dramatically increase a defendant’s sentence based on jury-acquitted conduct is at war with the fundamental purpose of the Sixth Amendment’s jury-trial guarantee. The Constitution affords defendants the “right to a speedy and public trial, by an impartial jury.” U.S. Const. Amend. VI. That right is “designed to guard against a spirit of oppression and tyranny on the part of rulers[.]” United States v. Gaudin, 515 U.S. 506, 510-511, 115 S.Ct. 2310, 132 *930 L.Ed.2d 444 (1995) (quotation marks omitted); see also Duncan v. Louisiana, 391 U.S. 145, 155, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (“A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government.”). Accordingly, before depriving a defendant of liberty, the government must obtain permission from the defendant’s fellow citizens, who must be persuaded themselves that the defendant committed each element of the charged crime beyond a reasonable doubt. That jury-trial right is “no mere procedural formality,” but rather a “fundamental reservation of power in our constitutional structure.” Blakely v. Washington, 542 U.S. 296, 306, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
Yet as the law now stands, prosecutors can brush off the jury’s judgment by persuading judges to use the very same facts the jury rejected at trial to multiply the duration of a defendant’s loss of liberty threefold. In that regime, the jury is largely “relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish” at sentencing. Blakely, 542 U.S. at 307, 124 S.Ct. 2531.
To be sure, the Supreme Court has generally permitted judicial fact-finding by a preponderance of the evidence at sentencing that goes beyond what the jury’s verdict encompasses, including facts about character, criminal history, cooperation, and even some unadjudicated conduct. See United States v. O’Brien, 560 U.S. 218, 224, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010) (“Sentencing factors * * * can be proved to a judge at sentencing by a preponderance of the evidence.”). But allowing judges to materially increase the length of imprisonment based on facts that were submitted directly to and rejected by the jury in the same criminal case is too deep of an incursion into the jury’s constitutional role. “[W]hen a court considers acquitted conduct it is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved.” United States v. Pimental, 367 F.Supp.2d 143, 152 (D.Mass.2005); see also United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (“An acquittal is accorded special weight.”); United States v. Scott, 437 U.S. 82, 91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (“[T]he law attaches particular significance to an acquittal.”).
The oft-voiced response, of course, is that the different treatment arises because a jury must find that the defendant committed charged conduct beyond a reasonable doubt, while a judge is permitted to find conduct relevant to sentencing under the lesser preponderance-of-the-evidence standard. The problem with relying on that distinction in this setting is that the whole reason the Constitution imposes that strict beyond-a-reasonable-doubt standard is that it would be constitutionally intolerable, amounting “to a lack of fundamental fairness,” for an individual to be convicted and then “imprisoned for years on the strength of the same evidence as would suffice in a civil case.” In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In other words, proof beyond a reasonable doubt is what we demand from the government as an indispensable precondition to depriving an individual of liberty for the alleged conduct. Constructing a regime in which the judge deprives the defendant of liberty on the basis of the very same factual allegations that the jury specifically found did not meet our constitutional standard for a deprivation of liberty puts the guilt and sentencing halves of a criminal case at war with each other.
*931 The other explanation commonly proffered is that, as long as the final sentence does not exceed the statutorily authorized maximum length of incarceration for the offense of conviction, the defendant is only being sentenced for the crime he committed: That blinks reality when, as here, the sentence imposed so far exceeds the Guidelines range warranted for the crime of conviction itself that the sentence would likely be substantively unreasonable unless the acquitted conduct is punished too. After all, “it is not the abstract dignity of the statutory maximum that is at stake in the Supreme Court’s Sixth Amendment jurisprudence, but the integrity of the jury right itself, the cornerstone of our criminal justice system.” United States v. Faust, 456 F.3d 1342, 1350 (11th Cir.2006) (Bark-ett, J., concurring specially).
. Second, while the panel understandably rows with the tide of past decisions allowing the use of acquitted conduct at sentencing, my reading of more recent Sixth Amendment precedent from the Supreme Court casts substantial doubt on the continuing vitality of that categorical rule, at least when acquitted conduct causes a dramatic and otherwise substantively unreasonable increase in a sentence. In Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the Court held that the Sixth .Amendment does not allow a judge, absent a jury, to find any fact that “alter[s] the prescribed range of sentences to which a defendant is exposed and do[es] so in a manner that aggravates the punishment.” Id. at 2158. In so holding, the Court rejected the rule in Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), that allowed judges to find facts which increased a defendant’s mandatory minimum sentence, but not the maximum sentence. Id. at 2158.
While Alleyne’s requirement that the jury, not a judge, find facts fixing the permissible sentencing range applies to statutory limitations, it is hard to understand why the same principle would not apply to dramatic departures from the Sentencing Guidelines range based on acquitted conduct. After all, the Supreme Court has held that, as a matter of law, a sentence within the Guidelines range is presumptively reasonable and lawful, and any “major departure” from that range requires “significant justification.” Gall v. United States, 552 U.S. 38, 50, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); see also id. at 49, 128 S.Ct. 586 (“[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range,” and if a sentence falls within the Guidelines range, “the appellate court may * * * apply a presumptioh of reasonableness.”).
Because the Sentencing Guidelines have “force as the framework for sentencing,” Peugh v. United States, — U.S. -, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013), and because, in the usual case, “the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range,” Freeman v. United States, — U.S. -, 131 S.Ct. 2685, 2692, 180 L.Ed.2d 519 (2011), the Guidelines demark the de facto boundaries of a legally authorized sentence in the mine run of cases. Given that reality, the Sixth Amendment should not tolerate the use of acquitted conduct specifically rejected by the jury to provide the required “significant justification” for tripling a defendant’s sentence. See Jones, 135 S.Ct. at 8-9 (Scalia, J., joined by Thomas and Ginsburg, JJ., dissenting from the denial of certiorari) (“It unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable— thereby exposing the defendant to the longer sentence — is an element that must *932 be either admitted by the defendant or found by the jury. It may not be found by a judge,” especially when “a jury acquitted them of that offense.”).
Third, the Constitution generally affords the prosecution one shot at convicting a defendant of charged conduct. But counting acquitted conduct at sentencing gives the government a second bite at the apple. Sentencing has become the forum in which the prosecutor asks the judge to multiply a defendant’s sentence many times over based on conduct for which the defendant was just acquitted by the jury. See United States v. Canania, 532 F.3d 764, 776 (8th Cir.2008) (Bright, J., concurring) (“[W]e have a sentencing regime that allows the Government to try its case not once but twice. The first time before a jury; the second before a judge.”).
At the same time, factoring acquitted conduct into sentencing decisions imposes almost insurmountable pressure on defendants to forgo their constitutional right to a trial by jury. Defendants will face all the risks of conviction, with no practical upside to acquittal unless they run the board and are absolved of all charges.
In short, allowing jury-acquitted conduct to increase a defendant’s sentence places defendants and their attorneys between a proverbial rock and a hard place: a hard-fought partial victory — even, as here, a substantial win on the majority of counts— can be rendered practically meaningless when that acquitted conduct nonetheless produces a drastically lengthened sentence. Even our court, though bound by precedent, has acknowledged the unfairness inherent in that result. See, e.g., United States v. Jones, 744 F.3d 1362, 1369 (D.C.Cir.) (“[W]e understand why appellants find sentencing based on acquitted conduct unfair.”), cert. denied, — U.S. -, 135 S.Ct. 8, 190 L.Ed.2d 279 (2014); United States v. Settles, 530 F.3d 920, 923-924 (D.C.Cir.2008) (“[W]e understand why defendants find it unfair for district courts to rely on acquitted conduct when imposing a sentence; and we know that defendants find it unfair even when acquitted conduct is used only to calculate an advisory Guidelines range because most district judges still give significant weight to the advisory Guidelines when imposing a sentence.”).
While I am deeply concerned about the use of acquitted conduct in this case, I concur in the denial of rehearing en banc. That is because only the Supreme Court can resolve the contradictions in the current state of the law, by either “put[ting] an end to the unbroken string of cases disregarding the Sixth Amendment” or “eliminating] the Sixth Amendment difficulty by acknowledging that all sentences below the statutory maximum are substantively reasonable.” Jones, 135 S.Ct. at 9 (Scalia, J., joined by Thomas and Ginsburg, JJ., dissenting from denial of certio-rari). Though I am not certain Bell’s argument is directly foreclosed by Supreme Court precedent, my colleagues on the panel have done their best to navigate existing precedent, recognizing that the Supreme Court has thus far declined to address this issue. Going en banc would only delay affording the Supreme Court another opportunity to take up this important, frequently recurring, and troubling contradiction in sentencing law.